[No. 14236.   Department One. —October 5, 1891.]

W. H. WORLEY, APPELLANT, *v.* ROBERT NETHERCOTT, RESPONDENT.

VENDOR AND PURCHASER — CONTRACT OF SALE — IMPERFECT TITLE — REMEDY OF PURCHASER — PAYMENT — RESCISSION — EJECTMENT BY VENDOR.— A purchaser of land in possession thereof under a contract of sale, by the terms of which the vendor is to give a warranty deed of the property, conveying a good and perfect title thereto, cannot, upon the vendor's failure and inability to convey a good and perfect title, retain both the land and the purchase-money until a perfect title shall be offered him, but he must pay the purchase price according to the contract, and receive such title as the vendor is able to give, if he chooses to retain the possession of the land, or he may rescind the contract, restore the possession to the vendor, and recover the purchase-money paid, together with the value of his improvements, after deducting therefrom the fair rental value of the premises; and if he fails and refuses to adopt either course, he is liable to an action of ejectment by the vendor.

APPEAL from a judgment of the Superior Court of Tehama County, and from an order denying a new trial.

The facts are stated in the opinion of the court.

*John F. Ellison,* and *W. P. Johnson,* for Appellant.

Whether the evidence shows a good and perfect title in the plaintiff or not, as between him and the defendant, plaintiff was the owner of the property in dispute. Having gone into possession under him, defendant was estopped to deny plaintiff's title, and having failed to accept a deed and pay the purchase-money,

plaintiff was entitled, after rescinding the contract and demanding possession, to be restored to his original possession. (*Hoens* v. *Simmons*, 1 Cal. 119; 52 Am. Dec. 291; *Ellis* v. *Jeans*, 7 Cal. 410; *Walker* v. *Sedgwick*, 8 Cal. 398; *Hicks* v. *Lovell*, 64 Cal. 15; 49 Am. Rep. 679; *Gates* v. *McLean*, 70 Cal. 50; *Rhorer* v. *Billa*, 83 Cal. 51; *Connolly* v. *Hingley*, 82 Cal. 643; *Hannan* v. *McNickle*, 82 Cal. 122.)

*William Nagle*, for Respondent.

Ejectment is not maintainable by a vendor of real property against his vendee in possession under an executory contract of sale who is not in default in the performance of his contract, or who seasonably and in good faith offers to comply with the terms of his purchase, and continues ready to comply with them. To a vendee in possession under such circumstances, the contract will avail him as an equitable defense to an action of ejectment brought against him by the vendor. (*Hicks* v. *Lovell*, 64 Cal. 19; 49 Am. Rep. 679; Warvelle on Vendors, p. 899, sec. 2; *Morrison* v. *Wilson*, 13 Cal. 494; 73 Am. Dec. 593; *Love* v. *Watkins*, 40 Cal. 566; 6 Am. Rep. 624; *Central Pacific R. R. Co.* v. *Mudd*, 59 Cal. 587; *Arguello* v. *Bours*, 67 Cal. 450; *Nunez* v. *Morgan*, 77 Cal. 429.) The principle upon which these cases were decided is, the vendee in possession under an executory contract of purchase is, in equity, regarded as the owner of the land, and not subject to an action of ejectment by his vendor (*Whittier* v. *Stege*, 61 Cal. 240), and is subject only to the lien of the vendor for the unpaid purchase-money. (Warvelle on Vendors, p. 197, sec. 12.) The vendor could not disregard the terms of his contract, and although required to give good title, exonerate himself by tendering a deed conveying no title. (*Haynes* v. *White*, 55 Cal. 41; *Barron* v. *Frink*, 30 Cal. 489; *Benson* v. *Shotwell*, 87 Cal. 49; *Heine* v. *Treadwell*, 72 Cal. 217; *Hill* v. *Grigsby*, 35 Cal. 662; Warvelle on Vendors, p. 419, sec. 7; p. 773, sec. 26; p. 775, sec. 27; p. 908, sec. 9.) An executory contract for the sale of real estate implies

a covenant for a title, which continues till merged by conveyance. (Abbott's Trial Evidence, 727, 728; *Fletcher* v. *Button,* 4 N. Y. 399; *Clute* v. *Robison,* 2 Johns. 595.) Plaintiff having no title, and being unable to give defendant any title, there were no terms or conditions to be performed by defendant until plaintiff first tenders to defendant a deed conveying a title to the property; and then, and not till then, will defendant be in default. (*Peasley* v. *Hart,* 65 Cal. 524; *Folsom* v. *Bartlett,* 2 Cal. 164; *Osborne* v. *Elliott,* 1 Cal. 338.) Plaintiff in this case could not rescind without the consent of defendant (Civ. Code, sec. 1689, subd. 5), which has not been shown to have been given. Nor can plaintiff compel defendant to rescind, when defendant has partly performed the contract. (*State* v. *McCauley,* 15 Cal. 458; *Montgomery* v. *Kasson,* 16 Cal. 194; *Barron* v. *Frink,* 30 Cal. 489; *Hills* v. *Grigsby,* 35 Cal. 662; *Salmon* v. *Hoffman,* 2 Cal. 143; 56 Am. Dec. 322.) Plaintiff is not entitled to rent for the time defendant occupied the premises under the contract of purchase, as it is well settled that where a vendee has been permitted to enter upon the possession of premises under an agreement to purchase the same, and through the fault of the vendor the sale is never consummated, notwithstanding the occupancy may have been beneficial to the vendee, he cannot be compelled to pay for such use. (Warvelle on Vendors, p. 890, sec. 3; *Willis* v. *Wozencraft,* 22 Cal. 617; Sugden on Vendors, 264, 311; *Marshall* v. *Caldwell,* 41 Cal. 611.) The defendant could set up his equitable title to the land, and resist a suit for possession brought by his vendor, and allege that he had failed and refused to perform the contract on his part, even though the condition to be performed were a deed to a good title to the land, especially when the condition is precedent to the maintenance of his action. (*Payne* v. *Treadwell,* 5 Cal. 310; Abbott's Trial Evidence, 727; *Wilson* v. *Holden,* 16 Abb. Pr. 133; *Thomas* v. *Bartow,* 48 N. Y. 198; *Hoffman* v. *Fett,* 39 Cal. 109; *Leggett* v. *M. L. Ins. Co. of N. Y.,* 53 N. Y. 394, 398; Warvelle on Vendors, p. 347, sec. 18; *Hunt* v. *Amidon,* 4 Hill, 345; 40 Am. Dec. 283.)

BELCHER, C. — In January, 1889, the plaintiff was re-
siding upon and claiming to own certain real property
in the town of Red Bluff, Tehama County.   On the 26th
of that month, plaintiff verbally agreed. to sell the real
property and some personal property to the defendant,
for the sum of $1,880, and to let him take immediate
possession thereof.   Plaintiff was to give a warranty deed
of the real property, conveying a good and perfect title
thereto, and defendant was to pay $1,000 cash, and give
his note for $880, bearing interest at the rate of ten per
cent per annum, but it was not stated how long the note
might run.   Defendant paid ten dollars to bind the bar-
gain, and asked paintiff if he had a good title to the
property, and the latter replied that he thought he had;
that he had a warranty deed of it.   Defendant asked for
an abstract of the title, and plaintiff agreed to furnish
one.   On the 29th of the month, defendant took posses-
sion, and about that time the abstract was made out and
put in the hands of Mr. Ellison, an attorney at law.   On
the 4th of February the parties met, and went to Mr. Elli-
son's office, and defendant testified:  " When I entered
Mr. Ellison's office, knowing that he had the abstract, I
said to him: 'As an attorney, can you say that the title
is perfect?'  He said: 'No, I can't.'  He said: 'I have
looked over it, and I can't say that it is perfect.'"  A few
days later, the parties again met, and plaintiff testified:
" I went to him and told him I was going away, and I
wanted to settle it up one way or another; he wanted to
know what I wanted to do, and I asked him if he was
satisfied with the title, and he said he was n't; then I told
him we would say quits; he said he had been out consid-
erable in moving down there, and would be in moving
away; I asked him how much, and he said about twenty
dollars; I told him I would pay it and he would give up
possession; he said he did n't care to do it."   Defendant
then proposed to retain possession of the property and
to make some improvements upon it, and plaintiff agreed
that he might make improvements costing from $100
to $150.

Before the end of February, plaintiff went to the mountains, and he did not return till some time in August. During his absence, defendant made improvements on the property, costing, as he testified, $388.21 besides his own work, which he estimated to be worth $125.

The matter remaining unsettled, plaintiff, in October, executed a warranty deed of the property, and on the 2d of November tendered it to the defendant, and demanded of him payment of the balance of the purchase-money, namely, $1,870. The defendant refused to accept the deed or to pay the money, but he, on the same day, tendered and asked plaintiff to execute a warranty deed for an undivided one half of the property, and in connection therewith, offered to pay him $1,075 for the real and personal property. The plaintiff refused to execute this deed or to accept the payment as offered.

The plaintiff then served on defendant a notice reading as follows: —

"MR. ROBERT NETHERCOTT.

"*Dear Sir,*—Having refused to pay me the contract price for the land hereinafter described, I hereby notify you that the contract of sale for said lots is hereby rescinded. I hereby offer to pay you for any improvements you have made upon said property, the amount they have cost you, upon being satisfied of the true amount, and also the ten dollars you paid thereon, with legal interest, deducting therefrom the rent of said premises during the time you have occupied them; and I hereby demand that you leave said premises, and surrender up to me the possession thereof. [Then follows a description of the property.]

[Signed]                              "W. H. WORLEY."

Possession was not surrendered, and the plaintiff brought this action of ejectment to recover the same. The defendant answered, denying all the averments of the complaint, and for a second defense, setting up the contract of sale and plaintiff's failure and inability to convey a good and perfect title, and his own readiness

and ability to perform his part of the contract on receiving a conveyance of such title.

The court below gave judgment for the defendant, from which, and from an order denying him a new trial, the plaintiff appeals.

It appears from the evidence that the plaintiff did not have a perfect title to the whole of the property which he agreed to sell; and it is claimed for respondent that under such circumstances he was not obliged to accept plaintiff's deed or to pay the purchase-money, but that he could retain both the land and money until a perfect title should be offered him.

We do not think this position can be maintained. In *Gates* v. *McLean*, 70 Cal. 42, the action was brought to recover the possession of certain land which the plaintiff had contracted to sell to the defendant, and the court, on page 50, said: "Even where the contract provides for the vendee taking possession, the remedy of the purchaser, where the title of the vendor fails, or he is unable to make conveyance as stipulated in the contract, is to rescind the contract, or offer to, and to restore the possession, in which case he may recover the purchase-money advanced and the interest, together with the value of his improvements, deducting therefrom such sum as the use of the premises may reasonably have been worth. If, on the other hand, the purchaser chooses not to rescind, but to retain possession under the contract, he can do so only on the condition that he pays the purchase-money and interest according to the contract. In the latter case, it is considered that he is willing to receive such title as the vendor is able to give, and is content with the personal responsibility of the vendor upon his covenants."

In *Rhorer* v. *Bila*, 83 Cal. 54, the court said: "A purchaser cannot remain in possession of lands under a contract and at the same time refuse to pay the purchase price. If the title fails, or the vendor refuses to convey, an action on the covenants of his deed or contract will give him all the relief to which he is entitled."

It is urged for respondent that what is said in the above quotation from *Gates* v. *McLean*, 70 Cal. 42, was not necessary to the decision of that case, and was merely *obiter dictum;* and that it was not a correct statement of the law, and ought not to be followed.

We cannot assent to the conclusion reached by counsel. In our opinion, the law was correctly declared, whether what was said was necessary to the decision of that case or not. To hold otherwise would, in many cases, work very great injustice.

It follows, in our opinion, that the findings and judgment were erroneous, and that they ought not to be permitted to stand.

We advise, therefore, that the judgment and order be reversed, and the cause remanded for a new trial.

FITZGERALD, C., and VANCLIEF, C., concurred.

The COURT. — For the reasons given in the foregoing opinion, the judgment and order are reversed, and cause remanded for a new trial.

Hearing in Bank denied.