Argued 4 April, decided 15 May, 1905.

## LIVESLEY *v.* MUCKLE.

### 80 Pac. 901.

VENDOR AND PURCHASER—WAIVER OF TERMS OF CONTRACT.

1. Where a contract provided that defendant would start a mill and demonstrate that it could be successfully run, and then would execute a lease to plaintiff, but plaintiff, immediately upon the making of the contract, entered into possession of the mill himself, and successfully ran the same without requiring or requesting defendant to make such demonstration, the conditions of the contract requiring a demonstration by defendant were waived.

SPECIFIC PERFORMANCE OF UNACCEPTED CONTRACT.

2. Where a contract obligated defendant to execute to plaintiff a lease, with an option to purchase, and plaintiff refused to accept the lease for no fault of defendants, plaintiff could not maintain a suit for damages or specific performance based on the option clause which would have been in the lease if accepted.

RIGHTS OF PARTIES ON FAILURE OF VENDOR TO PROVIDE GOOD TITLE.

3. Where the vendee in an executory contract for the purchase of real estate takes possession, and the title of the vendor fails, or he is unable to make conveyance as stipulated, the purchaser's remedy is either to rescind the contract, and to restore or offer to restore possession, in which case he may recover the purchase money and interest, or to retain possession under the contract, pay the purchase price, and accept such title as the vendor may be able to give. He cannot retain both the land and the purchase money until a perfect title is offered to him.

From Columbia: THOMAS A. MCBRIDE, Judge.

Statement by MR. JUSTICE BEAN.

This is an action by James Muckle and another against George F. Livesley, in which said Livesley filed a cross-bill. On July 3, 1902, the defendants Muckle, being the owners of certain sawmill property in St. Helens, leased the same to Smith & Murray for a year, upon certain terms and conditions, with the provision that, if they desired at any time during the continuance of the lease, the lessors would sell and convey the property to them by a good and sufficient deed, conveying the title, excepting one lot which was to be conveyed by a quitclaim deed, upon the payment of $3,133.33 in cash; the balance of the purchase price, of $6,666.67, to be secured by a first mortgage on the property. Smith & Murray immediately went into possession of the mill, and soon thereafter organized the St. Helens Lumber Co., a corporation, to take over the lease and their rights thereunder. The mill company operated the mill until December, when it became financially embarrassed, and a receiver was appointed by the state court to take possession of its assets. Among its debts was one to the defendants for $2,000, money borrowed. About this time plaintiff, through some arrangement, the details of which are immaterial herein, with

Smith & Murray and the lumber company, undertook to finance the enterprise and take care of the debts of the lumber company. He applied to the defendants for a confirmation of the lease of the property, but they declined to negotiate with him until they had recovered possession, claiming that the conditions of the lease to Smith & Murray had been broken and the lease forfeited, and that they were entitled to possession of the property. Upon an application made by them to the court appointing the receiver, setting up the alleged forfeiture, an order was made requiring him to deliver possession of the mill to them, which was done accordingly. They thereupon entered into the following agreement with plaintiff.

"Memorandum. In consideration of the sum of $2,043.66, to us paid by G. F. Livesley, we hereby agree to and with the said Livesley that we will start the mill mentioned in the lease made July 3, 1902, by us to Herman Smith and George P. Murray, and will demonstrate that the same can be successfully run, making good lumber; and that when this is done we will execute to said Livesley a lease conditioned in all respects as to the lease to said Smith and Murray is, but to end at the same time said lease ends.

"Provided, that in case any litigation shall grow out of the said lease, said Livesley shall defend such litigation, and our lease to him must be subject to such orders as shall be made therein; and in case we fail to demonstrate the fact that said mill can be successfully run and cut good lumber, we will return to said Livesley the said sum of money so paid by him, and negotiations between us will be all off. The expense of starting said mill, both for material and wages, shall be paid by said Livesley, who shall own the output thereof."

Upon the making of this agreement, plaintiff entered into possession of the mill, and proceeded to operate it without requesting or demanding of the defendants that they comply with their stipulation to demonstrate that it could be run successfully and make good lumber; and thereafter the defendants offered to execute to him a lease as agreed upon, but he refused to accept it until certain pending bankruptcy proceedings against the mill company had been disposed of. About the time the term specified in the lease from the defendants to Smith & Murray was to expire, the plaintiff indicated a willingness to purchase the property on the terms stipulated in such lease, and

the defendants, being anxious to sell, prepared a deed for delivery to the plaintiff; but he was advised by his counsel that defendants could not convey a merchantable title, and so refused to accept the deed or pay the purchase money. He, however, remained in possession of the property, and did not surrender or offer to surrender it to defendants. They thereupon commenced an action at law to recover possession, in which the plaintiff, by way of cross-bill, set up the facts detailed, demanding affirmative relief. Upon the trial the court decreed that, upon the payment by plaintiff of $10,000 within 30 days, the defendants should convey the property to him, but, in case he failed to make the payment, defendants should have restitution of the property, and damages for the withholding of the same. The plaintiff declined to make the payment, and expressly waived the right to purchase the property, and thereupon decree of restitution and for $1,425 damages was entered in favor of the defendants. From this decree the plaintiff appeals.

AFFIRMED.

For appellant there was a brief over the names of *Samuel Hiram Gruber* and *William Ellis Stowe,* with an oral argument by *Mr. Gruber.*

For respondent there was a brief over the names of *Julius Caesar Moreland* and *Lionel Richard Webster,* with an oral argument by *Mr. Moreland.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. The cross-bill filed by the plaintiff in the action at law brought against him by the defendants to recover possession of the property in question, and the case made for him on this appeal, proceed on the theory that he is entitled to all the rights and remedies against the defendants that would have accrued to him, had the lease mentioned and referred to in the memorandum agreement between him and the defendants on January 13th been in fact executed. His position is that he is entitled either to a deed conveying to him a merchantable title of the property, or to damages for a breach of the contract to convey. The vice of this position lies in the fact that the defendants

never agreed to sell and convey the property to him. The only contract they had with him was to "demonstrate" that the mill could "be successfully run, making good lumber"; and if they did so execute to him a lease conditioned as the one formerly given by them to Smith & Murray, except that it should end on July 3, 1903, and should be subject to such orders as should be made in any litigation growing out of the former lease, and if they failed to demonstrate that the mill could be successfully run, making good lumber, they were to return the money paid by him, and all negotiations between them were to be off. The pleadings expressly admit that, immediately upon the making of the contract between the plaintiff and the defendants, the plaintiff entered into possession of the mill property, and demonstrated himself that it could be successfully run and would make good lumber, and thereafter continued in possession, without requiring or requesting the defendants to make such demonstration, and so waived the conditions of the agreement in that regard.

2. It is in proof that after they had thus shown that the mill could be successfully run, making good lumber, the defendants offered and were ready and willing to make the lease as agreed upon, but the plaintiff would not accept it, because of some litigation in the bankruptcy court to which the defendants were not parties, and for which they were not responsible. The plaintiff having refused to accept the lease, it is difficult to understand how he can claim any rights by virtue of some provision which would have been in the lease if it had been made and accepted. For this reason, we are of the opinion that plaintiff is not entitled to any relief in this suit.

3. If, however, the lease had been in fact executed and delivered, the plaintiff could not have remained in possession of the property, and refused to pay the purchase price. Where the vendee under an executory contract for the purchase of real estate takes possession, and the title of the vendor fails, or he is unable to make conveyance as stipulated, the remedy of the purchaser is either to rescind the contract and restore or offer to restore possession, in which case he may recover the purchase money and interest, or retain possession under the contract, and

pay the purchase price, accepting such title as the vendor may be able to give. He cannot retain both the land and the purchase money until a perfect title shall be offered to him: *Gates* v. *McLean,* 70 Cal. 42 (11 Pac. 489) ; *Rhorer* v. *Bila,* 83 Cal. 51 (23 Pac. 274) ; *Worley* v. *Nethercott,* 91 Cal. 512 (27 Pac. 767, 25 Am. St. Rep. 209).

It follows that the decree of the court below must be affirmed, and it is so ordered.    AFFIRMED.