[No. 4537.  Decided September 24, 1903.]

SEATTLE NATIONAL BANK OF SEATTLE, *Respondent* v. J. B. POWLES, *Appellant.*[1]

SALES—RECISSION—AGENCY—SUFFICIENCY OF EVIDENCE.  Where defendant, a broker, paid a draft accompanying a consignment of fruit by a check to a collecting bank, which thereupon delivered the bill of lading to the defendant and gave notice to the drawer that the draft was paid, and defendant attempted to rescind the contract and stopped payment of the check upon discovering defects in the goods, in an action on the check the issue tendered in defendant's answer that the collecting bank was agent of the consignor is material to his defense of rescission, and is not supported by proof that it may have been agent for the consignor's bank, for the purpose of collection.

SAME.  The draft appearing to have been purchased by the forwarding bank, the collecting bank rendered itself liable by delivering the bill of lading and giving notice that the draft was paid, and as these acts were instigated by the defendant, he must suffer the loss.

SAME—ESTOPPEL.  The defense of rescission *in toto* of a contract upon which goods were consigned cannot be maintained where the defendant surrendered the bill of lading to the carrier, removed and sold a portion of the goods, retains the proceeds thereof, together with overcharges collected on the freight prepaid by the consignor, and stopped payment on his check only after notice had been given by the collecting bank that the draft was paid.

SAME—EVIDENCE—CUSTOM.  In such a case it was competent to admit testimony on the part of the plaintiff as to what became

1Reported in 73 Pac. 887.

of the goods and proceeds, and the rejection of evidence as to the custom of merchants as to the disposition of goods upon such consignments was not prejudicial error.

Appeal from a judgment of the superior court for King county, Griffin, J., entered May 3, 1902, upon the verdict of a jury rendered in favor of the plaintiff by direction of the court.    Affirmed.

*Fred Rice Rowell, John L. Neagle,* and *William Welch,* for appellant.   Evidence of the custom of merchants as to sales of goods received on consignment was improperly rejected.   *Schooner Reeside,* 2 Sumn. 567; *Hooper v. Chicago & N. W. R. Co.,* 27 Wis. 81; *The Delaware,* 14 Wall. 579; *Barber v. Brace,* 3 Conn. 9, 8 Am. Dec. 149; *Lapham v. Atlas Ins. Co.,* 24 Pick. 1; *Mazetti v. Smith,* 49 L. T., N. S., 580; *Boon v. Steamboat Belfast,* 40 Ala. 184, 88 Am. Dec. 761.    The transfer of the bill of lading represented an actual delivery of the goods subject to equities, and did not preclude the appellant from asserting any defenses that he might have against the consignor.    *Pollard v. Vinton,* 105 U. S. 7; *Emery's Sons v. Irving Nat. Bank,* 25 Ohio St. 360, 18 Am. Rep. 299; *Toledo etc. R. Co. v. Gilvin,* 81 Ill. 511; *Lickbarrow v. Mason,* 2 Smith's Lead. Cas., 1045 (9th Am. ed.); *Finch v. Gregg,* 126 N. C. 176, 35 S. E. 251, 49 L. R. A. 679; *Landa v. Latin,* 19 Tex. Civ. App. 246, 46 S. W. 48. An actual change of possession is represented thereby. *First Nat. Bank of Cincinnati v. Kelly,* 57 N. Y. 36; *First Nat. Bank of Greenbay v. Dearborn,* 115 Mass. 219, 15 Am. Rep. 92; *Pratt v. Parkman,* 24 Pick. 42.    This rule is not changed by Bal. Code, §§ 3598 and 3599.    *Yarwood v. Happy,* 18 Wash. 248, 51 Pac. 461; *Shaw v. Railroad Co.,* 101 U. S. 557.

*Bausman & Kelleher,* for respondent.

PER CURIAM.—This action was commenced by respondent, The Seattle National Bank, a corporation, against appellant, J. B. Powles, on June 6, 1894, in the superior court of King county. The cause came on for trial April 18, 1902. Judgment was rendered in the trial court May 3, 1902, in favor of respondent, for $974.42, from which defendant prosecuted this his appeal. Respondent's cause of action is founded upon a certain bank check given by appellant, of which the following is a copy:

"Seattle, Wash. 11, 29, 1893.        No. 400.
"Dexter Horton & Company, Bankers:
"Pay to Seattle National Bank or order $619.50, Six hundred and nineteen 50-100 dollars.
                                       "J. B. Powles."

Respondent alleges that it presented such check to the drawee for payment on December 1, 1893, which was refused under instructions from appellant. Appellant, by his answer, denies that he delivered the check in question at any time other than on December 1, 1893, and denies further that he received any consideration whatever for its issuance. For an affirmative defense appellant alleges that during the latter part of the year 1893 he and one E. H. Mote, of Leesburg, in the state of Florida, entered into a contract whereby said Mote agreed to ship to him (appellant) a carload of oranges from said Leesburg to Seattle, Washington, which were to be received at the latter city and sold by appellant as a broker on brokerage, which was to be paid by Mote; that it was also agreed that such oranges were to be shipped by Mote to appellant at the request of the former party; that said oranges were to be delivered to appellant at Seattle "in a perfectly sound and marketable condition," subject to examination and approval by the appellant upon their arrival; that it was also agreed, in the event of said oranges not being

in such condition upon their arrival, appellant was not to be bound or required to receive or accept the oranges, or any part thereof, as broker, or at all; that in case such oranges were in good condition appellant should pay to Mote the price therefor; that pursuant to said agreement Mote did ship a carload of oranges from Leesburg, Florida, consigned to the owner, Mote, at Seattle, where the oranges arrived on or about November 30, 1893; that at the same time Mote sent for collection to respondent bank his account for the purchase price of said oranges, as his agent, to make the collection from appellant; that on or about December 1, 1893, believing the oranges to be of the kind and quality called for by the agreement, the appellant made and delivered to respondent, as the agent of Mote, the above check, and immediately thereafter proceeded to remove said oranges from the car, when for the first time he discovered that they had been frozen *en route,* and were in an unsound and unmarketable condition; that immediately upon the discovery of the condition of the oranges, appellant stopped payment on such check, and notified the respondent thereof; that he refused to accept or receive the oranges, or any part thereof, and also notified respondent not to pay out any money on account of the above transaction, and also immediately notified Mote by telegraph as to the condition of and his refusal to accept or receive said oranges. Wherefore he alleges there was no consideration for the execution of the check.

Respondent, by its reply, puts in issue the material averments of the affirmative defense, and makes certain admissions, among which are those relating to the arrival of the carload of oranges, the stopping of the payment of the check, and notifying respondent thereof. It alleges that after giving the check appellant proceeded to remove

the oranges from the car. Respondent specially denies that it was the agent of Mote, or that any account was ever sent to it by Mote for collection, or at all, or that appellant ever notified it not to pay out any money on account of the above transaction.

At the trial, after listening to the evidence on both sides, the superior court directed the jury to return a verdict for the amount claimed in favor of respondent. The evidence established the following facts: Appellant was, in the fall and winter of 1893, engaged in the fruit brokerage business in the city of Seattle. About September 20, 1893, negotiations by letter commenced between appellant and Mote with reference to placing oranges on the Seattle market and elsewhere in this state and in Oregon. The correspondence would indicate that on the part of appellant, up to the time of receiving information about the draft and bill of lading hereafter referred to, he had reason to conclude that the relation of shipper and broker existed between him and Mote. The respondent was not a party to these transactions, save as may hereafter appear. On the 25th day of November, 1893, the respondent bank received in the course of business for collection a sight draft drawn on appellant by Mote, payable to his order, for the sum of $619.50. This draft was dated at Leesburg, Florida, November 15, 1893.

Accompanying such draft was a bill of lading for a carload of oranges, issued by the carrier at that point, wherein Mote was named both as consignor and consignee for the transportation of the oranges from Leesburg to Seattle; also a letter of instructions. Attached to the papers was a slip containing the following words: "Hold for arrival, wire Bank of Leesburg, Leesburg, Fla. When paid or refused. Of goods if necessary." The draft and bill of

lading were indorsed and delivered to the "Bank of Lees-burg," together with the other documents, and were sent by it to respondent. Respondent notified appellant of the receipt of the draft and bill of lading, and he came to the bank and examined the documents, which was several days prior to the arrival of the oranges. Respondent allowed appellant to take possession of the bill of lading, also gave written permission to the railroad company for examination of the fruit. This was the day before the arrival.

The oranges arrived in Seattle on the 30th day of November, 1893, and on that day appellant and three other parties made an examination of them. Between 11 and 12 o'clock on the following day Powles called at the respondent bank, issued his check for the face of the draft, which was stamped "Paid" by respondent, and surrendered to him, he having retained the bill of lading. Powles proceeded to and did remove a considerable portion of the fruit (103 boxes). Afterwards on that day, he found that a large part thereof had been frozen, presumably on the route. Appellant then gave the drawee bank notice not to pay such check, withdrew his funds therefrom, and notified respondent before presentation that he would not pay the check, giving as his reason that the fruit was in an unmarketable condition.

In the meantime, between giving the check on the same day and notice to respondent, the latter had sent the Leesburg bank a telegram that the draft had been paid. About two hours afterwards the respondent wired again to its correspondent bank that payment on the check had been stopped. Correspondence as to this transaction was afterwards had between the two banks. Respondent paid the amount called for by the draft to its correspondent about the latter part of February, 1894. The bill of lading was not produced at the trial, appellant admitting

that it had been surrendered, through his agency, to the railroad company, who refused to return it to him. It appears from the evidence, that from the good oranges Powles had received he realized $130.92, that he also collected $42.00 overcharges for freight paid on the carload of oranges as per contract with Mote, and that he retained these several amounts. He says that he offered to return the $42.00 to the railroad company at Seattle. After hearing the evidence, the trial court took the case from the jury, and directed a verdict in respondent's favor.

Error is alleged on five distinct grounds: (1) In striking out the testimony of Powles as to the contents of the telegram and letter to Mote in ordering the oranges; (2) in refusing to admit testimony of competent witnesses as to what was the custom, at that time, in Seattle, where a sale was made of goods consigned as they were in this case; (3) in admitting evidence showing the amounts realized from the sales of the oranges not frozen; (4) by taking the question of agency of respondent from the jury; (5) in directing a verdict for the respondent.

In order to better understand the points made by appellant, they will be considered, as far as deemed material, in a somewhat different order from that alleged. Under the issues tendered by the appellant, it was an essential matter to his defense that he establish the fact of agency between respondent and Mote; but after carefully reading and considering all the testimony, oral and documentary, we fail to find anything tending to show such relationship. The evidence, considered in its most favorable light for the appellant, establishes, we think, that the respondent acted as the collector or agent of the Bank of Leesburg for the collection of the draft on Powles, with limited authority, of which appellant was fully advised, but that it was never the agent of Mote for any

purpose.   The relations between the Leesburg bank and Mote did not appear.   On the face of the record, however, that bank appears to be the purchaser of the draft.   If this be so, then the respondent made itself liable to the Leesburg bank by surrendering the bill of lading and notifying the bank that the draft had been paid.   As it did these things at the instigation of and because of the acts of the appellant, he cannot now be heard to complain because he made a too hasty or superficial examination of the oranges.   If any one must suffer because of these acts, it must be the appellant, not the respondent.

But if we should conclude that the respondent was the agent of Mote, still we are of the opinion appellant's defense cannot be maintained.   The law is that a party cannot ratify one part of a contract or transaction, which is beneficial to his interests, and disaffirm as to the remainder; that if he elects to rescind, he must do so *in toto,* within a reasonable time, in some unequivocal manner. Some writers on elementary law, as well as some courts, lay down the rule that the parties must be placed in *statu quo.*   By alleging the check to have been given without consideration, appellant took the position that he elected to rescind the contract or transaction had with reference to the oranges.   It seems, however, that he kept and still retains a considerable part of the consideration for the sale, or consignment of the oranges, together with some $42.00 overcharged freight received from Mote.   His position in that respect cannot be maintained.   He must either elect to affirm the contract, and defend because of its breach, or rescind the same *in toto.*   As he has done neither, he cannot be heard to dispute his liability on the draft.   *Wainwright v. Weske,* 82 Cal. 193, 23 Pac. 12; *Snow v. Alley,* 144 Mass. 546, 11 N. E. 764, 59 Am.

Rep. 119; *Gay v. Alter,* 102 U. S. 79; 24 Am. & Eng. Enc. Law, pp. 645-6.

"After a contract has been broken, whether by an inability to perform it, by a rescinding against right, or otherwise, the party not in fault may sue the other for the damages suffered; or, if the parties can be placed *in statu quo,* he may, should he prefer, return what he has received, and recover in a suit the value of what he has paid or done. The pursuing of the latter alternative is called rescission." Bishop, Contracts, § 842 (Enlarged ed.); *English v. Spokane Commission Co.,* 57 Fed. 451.

The above are only a few of the many authorities which may be cited on the general proposition of "rescission." There are some exceptions to this general rule, but the case at bar does not fall within the purview of any of them, as far as we have been able to learn, after a careful research. The logic of the situation forces us to the conclusion that appellant did not take the proper steps to effect the rescission of his contract, whether it was one for the sale of the merchandise, or a consignment on commission. Appellant's counsel have argued somewhat elaborately in their brief as to the rights of assignees of sight drafts and bills of lading, contending, that neither possess the qualities of negotiable paper, so as to cut off equities existing between the original parties to the transaction; that respondent stands in the shoes of Mote; and that he has the same defense that he would have had if Mote were suing for the purchase price. We have made a careful examination of the authorities cited on that point, particularly those referred to at length in the brief, besides some others. For the purposes of this controversy, as at present advised, we are not inclined to dispute the general propositions of commercial law enunci-

ated in them.     But these citations are not applicable to
the facts in this controversy.     Here the appellant in-
spected the merchandise, surrendered the bill of lading
·into the possession of the carrier company, removed a part
of the oranges from the car, took up the draft, issued
his check, and only stopped payment after respondent had
notified the Leesburg bank that the draft had been paid.
By these acts he placed it out of his power to rescind.
He could not return the bill of lading to the respondent,
but this was no fault of the latter.     We therefore think
the trial court did not err in admitting testimony as to
what became of the oranges received or their proceeds.
In view of the admitted facts, the ruling out of testimony
as to the custom among merchants, where a sale of the
oranges was made, becomes immaterial, for, if it were
true that such ruling was erroneous, it was error without
prejudice.

   No reversible error appearing in the record, the judg-
ment of the superior court should be affirmed, and it is
so ordered.