[No. 4261. Decided March 8, 1904.]

LUDWIG TIMM, *Respondent,* v. SUSAN TIMM, *Appellant.*[1]

APPEAL—BRIEFS—PRINTING FINDINGS—DISMISSAL. An appeal will not be dismissed because of the failure of the appellant to print the findings of fact in the opening brief where, after the motion, the findings are printed in appellant's reply brief (*Young v. Borzone*, 26 Wash. 4, followed).

ATTORNEY AND CLIENT—AUTHORITY TO COMPROMISE SUIT—COMPROMISE OF PROPERTY RIGHTS IN ACTION FOR DIVORCE. An attorney is not authorized to settle the property rights of his client in a divorce case without express authority, and none appears where the attorney testified that his client had given him to understand that she ought to have one half of the property, and later wrote him urging him to get the matter fixed up, where-

[1]Reported in 75 Pac. 879.

upon he settled property rights valued at $3,000 by the receipt of notes for $250, and after being notified of the settlement, the client was dissatisfied therewith and refused to accept the money, and testified that she had never authorized a settlement for less than one half the property.

COMPROMISE—ATTORNEY'S SETTLEMENT—RATIFICATION—DIVORCE —DIVISION OF PROPERTY PURSUANT TO UNAUTHORIZED SETTLEMENT— NO ESTOPPEL BY PARTIAL APPLICATION OF DEPOSIT IN COURT TO PAYMENT OF SUIT MONEY. Where pending a divorce, the defendant's attorney makes an unauthorized settlement of the property rights, accepting $250 in full for the wife's interest in property of the value of $3,000, which the wife refuses to accept, and deposits the amount paid to her in the registry of the court, and the court applies $112 thereof for temporary alimony and attorneys' fees, which the plaintiff had been ordered to pay to the defendant, it is error for the trial court in awarding the defendant a divorce on the ground of plaintiff's cruelty, to find that the settlement is conclusive upon the defendant and to order that her share in the community property be limited to the balance of the sum paid on such settlement, and the defendant is not estopped by accepting the part of the proceeds awarded to her as suit money and alimony; especially since such division is inequitable, and contracts for the division of property made out of court in divorce cases should not be enforced unless fairly made and reasonably just.

Appeal by defendant from a portion of a judgment of the superior court for Adams county, Belt, J., entered December 31, 1901, making a division of property rights, upon awarding defendant a divorce, after a trial on the merits before the court without a jury. Reversed.

*O. R. Holcomb,* for appellant.

*Merritt & Merritt,* for respondent.

PER CURIAM.—Plaintiff Ludwig Timm instituted an action for divorce in the superior court of Adams county against defendant Susan Timm, his wife, on the grounds of desertion and abandonment. Defendant answered by denying the material averments in the complaint, and setting up an affirmative defense, alleging cruel and inhu-

man treatment on the part of plaintiff towards herself. The plaintiff filed a reply, denying the material allegations of the affirmative defense. On the 10th day of September, 1900, the cause came on for trial in the lower court. Judgment was given for plaintiff, dissolving the bonds of matrimony theretofore existing between the parties to this controversy.

On the 7th day of March, 1901, the trial court made an order vacating this judgment for divorce, and ordered, further, that plaintiff, Ludwig Timm, pay to the clerk of the court for the benefit of Susan Timm, defendant, on or before March 21st, 1901, $37 for suit money and $75 to O. R. Holcomb, Esq., her then attorney, as counsel fees. On the 10th day of April, 1901, the plaintiff having failed to comply with the order of the court regarding the payment of these sums of money, the superior court ordered that the plaintiff show cause, on or before May 27, 1901, why he should not be punished for contempt.

On October 5, 1901, defendant, by her attorney, Mr. Holcomb, deposited in the registry of the court three money orders, payable to the order of Susan Timm, aggregating $220.85, accompanied by notice to plaintiff and his attorneys that defendant refused to accept the same in accordance with any settlement made by plaintiff and defendant's former attorney, W. W. Zent, and that said attorney Holcomb claimed a lien for his fees on such deposit. On the 17th day of October, 1901, the plaintiff's attorneys served upon Mr. Holcomb a notice, in writing, disclaiming any interest in such postal money orders, and further stating in such notice that, "Said plaintiff hereby further notifies defendant and her attorney that no objection is, or will be, made to any order the court may see fit to make with regard to said moneys, by reason of the fact, hereinbefore stated,

that said plaintiff has and claims no right or interest in and to said moneys."

On October 28th, 1901, the lower court ordered, "That the clerk of said court deliver to defendant's attorney, O. R. Holcomb, the said three postal money orders, aggregating the sum of $220.85; that, upon the same being cashed, the said defendant's attorney retain the sum of $75, heretofore ordered to be paid as attorney's fee, and the further sum of $37, suit money for the benefit of the defendant, and that the remainder of said sum, towit, $108.35, be deposited with the clerk of the court, and retained by him pending the final determination of said suit."

The cause came on for trial on November 18, 1901. The lower court, found, among other things, that the allegations of cruelty and inhuman conduct contained in defendant's affirmative defense were true:

"(5) That, on the —— day of January, 1901, and during the pendency of this action, plaintiff and defendant made a full and final settlement of all of their property rights, both community and personal, and plaintiff executed his promissory note for the sum of two hundred fifty dollars ($250), that being the sum agreed upon in said settlement to be paid to defendant by plaintiff, as her share and interest in and to the property of plaintiff and defendant; and that at the time said note became due plaintiff paid, settled and satisfied said note with the interest thereon in full, and defendant received, accepted and retained said money so paid upon said note."

Conclusions of law were stated upon such findings as follows:

"(1) That defendant is entitled to a decree of divorce, severing the bonds of matrimony existing between plaintiff and defendant. (2) That plaintiff is entitled to all of the property, both real and personal, of every kind and description, belonging to plaintiff and defendant, either as com-

munity or separate property. (3) That defendant is entitled to recover her costs and disbursements in this action."

Defendant excepted to said 5th finding of fact, and the 2nd conclusion of law.ˈ Judgment was entered in the action on the findings, in accordance with these conclusions of law; that part of the judgment relating to the property rights of the parties being as follows:

"That plaintiff have and hold, in his own right, and as his separate property, against any and every claim of defendant, all of the property of every kind and description, both real and personal, owned by plaintiff and defendant as community property, or by plaintiff as his separate property, to have and to hold the same forever, as against any claim of defendant."

From this portion of the judgment, this appeal is taken. The appellant assigns that the trial court erred in making finding of fact No. 5, and conclusion of law No. 2, above noted, and in rendering that part of the judgment from which an appeal has been taken in this cause.

The respondent moves to dismiss the appeal herein, because appellant failed to print, in her opening brief, the findings of fact upon which errors are assigned in this court. The appellant thereafter caused to be printed, in her reply brief, all the findings, the conclusions of law, and final judgment. She therefore comes within the purview of the decision heretofore enunciated by this court in *Young v. Borzone,* 26 Wash. 4, 66 Pac. 135. The motion to dismiss the appeal is therefore denied.

The testimony in this record shows that the parties to this controversy intermarried in 1869, in the state of Minnesota; that they have raised a family of four children, all of whom are grown. The testimony in appellant's behalf amply sustain her allegations of cruelty on the part of respondent. It appears that she was a hard working woman, and was about fifty-four years old at the time of

the trial; that she helped respondent, during the period of their marriage, accumulate real and personal property, prior to the bringing of this action, of the value of more than three thousand dollars.

Respondent contends that the $250 designated in the findings was paid in pursuance of an agreement entered into between Ludwig Timm and Mr. W. W. Zent, appellant's first attorney in the case at bar. In support of such contention the following written instrument was offered and received in evidence at the trial:

"Ritzville, Washington, Jan. 21, 1901.

"Received of Ludwig Timm a note due October 15, 1901, for $250, same being in full settlement of all claims of Susan Timm, his former wife, against said L. Timm, this receipt to take effect if said Ludwig Timm shall deliver to W. W. Zent two notes, one for $150, signed by Mr. Ulm and William Snyder, and one for $80, signed by L. H. Jones, as collateral security, and if said notes are not delivered this receipt shall not take effect until said note by said Timm is fully paid. W. W. Zent, Att'y for Mrs. Susan Timm."

Mr. Zent subsequently collected the principal and interest on this $250 note, amounting to $270.85, and on October 2nd, 1901, wrote Mrs. Timm as follows, regarding this collection:

"October 2nd, 1901.

"Mrs. Susan Timm, Paha, Wash.

"Madam: Enclosed herewith I hand you $220.85, same being the proceeds from Mr. Timm's note for your part of his property, as per our settlement of January 21, 1901, and interest to date less my fees. Yours very truly, W. W. Zent."

This is the same $220.85 represented in the postal orders, above mentioned, in the proceedings of the trial court. Respondent testified in regard to this alleged settlement in the following language, in his direct examination:

"Had a settlement of all our property last winter, about January. Mr. Zent, her attorney, and I had the settlement. Mr. Zent told me to pay him $250, and he would settle everything for her. I had no money, so I gave him two notes [describing them] for a little more than $250, due last October. Mr. Zent took them, and agreed to cash them or collect them. They were paid. Mr. Zent took the money. I guess he paid it to her [defendant]."

Mr. Zent testified at the trial that, "While Mrs. Timm was at some place in Idaho, she wrote me a time or two, urging me to get the matter fixed up, or settle." On cross-examination, witness said that Mrs. Timm had always given him to understand that she ought to have half of the property, but she told him to get it settled; that, after witness had notified Mrs. Timm of the settlement, she came to his office and told him she was not satisfied; that witness "looked for Mrs. Timm's letter from Idaho, just before coming over to court, and could not find it." The appellant testified:

"I never authorized Mr. Zent to settle for me with Timm, only for half the property, . . . I never told Mr. Zent to settle with Mr. Timm, but always told him to get it settled by the court as soon as possible. . . . I never wrote to Mr. Zent from Idaho telling him to go ahead and settle the best way he could."

In view of the facts appearing in this record, we think that attorney Zent acted without authority in making the alleged compromise between the parties to this action; that whether he supposed he was acting for the best interests of his client in that behalf is an immaterial matter in the consideration of this controversy. The statute, Bal. Code, § 4766, conferred upon the attorney no such authority. In *Hallack v. Loft,* 19 Colo. 74, 34 Pac. 568, the court held that the agreement of an attorney "to surrender or compromise any substantial right of his client

is beyond the scope of his employment, and is not binding without express authority. His duty is to maintain, not to sacrifice, his client's cause." See, also, *Richardson Drug Co. v. Dunagan,* 8 Colo. App. 308, 46 Pac. 227, and authorities cited.

We now approach the most serious question in the cause. Did defendant ratify this compromise made between Mr. Zent and the respondent, Ludwig Timm, by cashing the postal money orders and receiving the proceeds thereof? At the time of the deposit of this money in the registry of the trial court, Mr. Timm had not complied with the order, made a number of months prior thereto, requiring him to pay $37 suit money, and the attorney's fee of $75. A part of the proceeds of these orders were applied towards discharging these two items of suit money and attorney fees; the balance of $108.85 remained in the custody of the court for further disposition.

It is a general principle of law that subsequent ratification, with full knowledge of the facts, is equivalent to precedent authority. It is also a rule of law, of general application, that when a party has received anything valuable in pursuance of a contract made between him and another party, that the party electing to rescind must place, or offer to place, the other party *in statu quo* by a restoration of the consideration received. This rule of law was enunciated by this court in *Seattle Nat. Bank v. Powles,* 33 Wash. 21, 73 Pac. 887, which was an action at law on a bank check, and in which the defense was a legal one, based on an alleged rescission. This rule regarding restoration of consideration is greatly relaxed in equitable suits and proceedings, as contradistinguished from the enforcement of strictly legal rights and remedies. This distinction, however, has not always been definitely observed by elementary writers, or in the decisions of

the courts. *Clapp v. Greenlee,* 100 Iowa, 586, 69 N. W. 1049; 18 Ency. Plead. & Prac. 837; *Ludington v. Patton,* 111 Wis. 208, 86 N. W. 571.

This alleged settlement arose after the institution of the action for divorce. The court, having jurisdiction over the whole subject-matter and the parties, can do complete equity between them. *Ludington v. Patton, supra.* In 2 Bishop, Marriage, Div. and Sep. § 702, the learned author uses the following language:

"It is not *per se* a violation of the law's policy, therefore it is not necessarily nugatory, for the parties to a divorce suit to enter into an agreement as to what alimony shall be allowed, how their property shall be divided, and the like, on the rendition of a decree for dissolution or separation. But if the contract is of a sort to stimulate the divorce, to discourage any defence, or in any way to impose upon the court, it will be void; for example, it will be void if so framed as to have effect only on condition that a divorce is granted without alimony. Hence practically, and almost and sometimes quite as a matter of law, an agreement of this sort should be laid before the judge, when, to an extent not readily definable, it will be ill if he dissents, and good if he approves."

The laws of the state of Iowa relating to the contracts of married women are very liberal in the matter of the removal of all common law disabilities pertaining to such agreements. The supreme court of that state in *Martin v. Martin,* 65 Iowa, 255, 21 N. W. 595, held that contracts made between husband and wife, prior to an action for divorce, with regard to temporary or permanent alimony on the dissolution of the marriage relation, will be recognized. The court there uses the following language: "The courts, however, will in every case scrutinize the transaction very closely, and the contract will not be enforced unless it appears to have been fairly entered into, and to be reasonably just and fair to the wife." We see no

just reason why this equitable rule should not be applied to such agreements made during the pendency of divorce suits, as well as to such contracts made in contemplation thereof. Furthermore, under our statutory provisions, Pierce's Code, § 4637, Bal. Code, § 5723, these proceedings with reference to the adjustment of the property rights between the spouses are regulated and determined by action of the court in that regard, and not by agreement between the parties. The courts will not lend themselves to anything that will encourage or facilitate divorces, by being too ready to recognize and enforce contracts between husband and wife adjusting their property rights, either before such proceedings are instituted or during their pendency.

Applying these principles to the case at bar, we think that the trial court erred in sustaining the alleged compromise between the parties; that, in cashing the above postal money orders and obtaining their proceeds, appellant is not precluded or estopped from asserting her property rights herein. We are of the opinion that, under the showing made in this record, the appellant is entitled to an equitable division of the property existing at the time this action was begun, in accordance with the provisions of the statute; that appellant should account to respondent, out of her share of such division, for the deposit of $108.85, and $50 attorney fee, received by Mr. Zent, with legal interest on such sums, respectively, from the time of the payment of the $250 note. These parties, on the further hearing of this matter, should be allowed, if they, or either of them, shall see fit, to submit additional testimony as to their respective property rights.

That portion of the judgment appealed from is therefore reversed, and the case remanded to the superior court, with directions to proceed as indicated in this opinion; the costs of this appeal to be taxed against respondent.