[No. 5001.   Decided December 20, 1904.]

TONY F. RICHARDSON, *Appellant,* v. LUCY F. RICHARD-
SON, *Respondent.*[1]

DIVORCE — CRUEL TREATMENT — ADULTERY — BOTH PARTIES AT
FAULT—DOWNFALL OF WIFE CAUSED BY HUSBAND.   In an action for
divorce brought by the husband upon the ground of adultery on
the part of the wife, in which she applies for divorce upon the
ground of cruel and inhuman treatment, it is not error to grant
the wife a divorce, although the evidence indicates that she was
guilty of adultery, where it appears that the husband by constant
charges of infidelity, threats, blows, abusive language and fre-
quent intoxication drove the wife from her home and was largely
instrumental in causing her downfall, and they are unable to live
together.

DIVORCE—DIVISION OF PROPERTY—SETTLEMENT OUT OF COURT IN-
DUCED BY FRAUD.   Where the parties to a divorce action have com-
munity personal property of the value of $23,000, besides real es-
tate, and pending the suit the wife is induced to sign an agree-
ment whereby she accepted about $2,500 as her portion of the
property, and the evidence shows an armed attack, by the hus-
band, upon the house in which she was living with a co-re-
spondent, made the night before the settlement, threats of prose-
cution, misrepresentations, and that the wife was not apprised of
her rights, the settlement is properly disregarded; since such set-
tlements should not be enforced unless fairly made and reasonably
just.

SAME—CUSTODY OF CHILDREN.   Although both parents are unfit
to have the custody of children of tender age, the exigencies of
this case require that the older children be awarded to the father
and the younger to the mother.

SAME—DIVISION OF PROPERTY.   In an action for a divorce where
the community personal property, consisting largely of stock, is
worth about $23,000, but the testimony as to value is exceedingly
meager, and there was no testimony as to the value of large hold-
ings of real estate, it is error, where the property should be evenly
divided, to decree the payment to the wife of $15,000 within sixty
days, and the cause will be remanded for further evidence as to
the value of the property and an even division thereof.

[1]Reported in 78 Pac. 920.

Appeal from a judgment of the superior court for Douglas county, Martin, J., entered July 24, 1903, upon findings in favor of the defendant, after a trial on the merits before the court without a jury, and also from an order for alimony entered September 1, 1903, in an action for a divorce. Reversed in part and affirmed in part.

*Merritt & Merritt,* for appellant.

*W. J. Canton,* for respondent.

DUNBAR, J.—The motion to dismiss this appeal seems to be without merit.

This action was commenced by appellant against respondent for a decree of divorce. The complaint alleged infidelity on the part of the wife, and adultery committed with the co-respondent, Thomas Madden, and divers and sundry other men not mentioned; pleaded a settlement of the community property interests between the appellant and respondent prior to the commencement of the action; asked that the community property, which was accorded to the appellant under the terms of the agreement, be decreed to be his, and asked to be awarded the care, custody, and control of Anna C., Lora L., Ruby A., and David A. Richardson, children of appellant and respondent, and that the respondent be awarded the care and custody of Iva J. Richardson, the youngest child of the appellant and respondent. The respective ages of these children were, Anna C., fourteen years of age; David A., nine; Lora L., seven; Ruby A., three; and Iva J., seven months of age; all five of said children being then living.

The respondent answered, denying the allegations of adultery and misconduct on her part; and alleging, abuse on the part of the husband that became unbearable; that he was guilty of associating with disreputable women;

that he habitually charged her with infidelity with every man who came about the premises; that he habitually cursed and damned her and called her harsh names, and finally drove her from her home; denied that she had made any settlement of property rights of any kind or character, except through fear and misunderstanding, and asked that the care and custody of the children be given to her, and that the court make a decree setting over to and giving respondent one-half of all the real and personal property belonging to the appellant and respondent.

These parties were married in December, 1885, and lived together on their ranch until about October, 1902, at which time, it is insisted by the appellant, on account of the intimacy of respondent with Thomas Madden, they had some trouble, and respondent went to live at the town of Wilson Creek, where Madden lived, and where the appellant visited her from time to time, generally going down Saturday nights and remaining over Sunday with her, until the 12th day of March succeeding, being the 12th day of March, 1903. The court found, that the allegations made in the appellant's complaint as to the commission of adultery by the respondent on the 17th day of March, 1903, had not been proven in the case, and that the most that could be said was that the respondent may have acted in an imprudent and indiscreet manner; that, during the longer portion of the married life of the parties, appellant had neglected the respondent and had failed to show that treatment due a wife from her husband, and that at times his treatment had been such as to force the respondent to the conclusion that he cared nothing for her; that he indulged in calling her many vile names, and cursing and swearing at her and his children; that he was addicted to the use of

intoxicating liquors, and often used the same to excess; that respondent had been faithful in all of her household duties; that, in the fall of 1902, appellant ordered the respondent, with their children, away from their home, whereupon they went from there to the town of Wilson Creek; that since said marriage the appellant and respondent have acquired, and now have, personal property of the value of $23,000, consisting of about 450 head of cattle of the value of about $15,000, and 1,500 head of sheep of the value of about $4,500, and horses and other property of a personal nature of the value of about $3,500; and have acquired real estate comprising 4,620 acres, together with certain lots and buildings in Coulee City, Douglas county, Washington, and Wilson Creek, Douglas county, Washington; that all of said property was acquired by the said appellant and respondent since said marriage, and is community property; that, about the time of the commencement of this action, the appellant did, through unwarranted means and without the respondent's being apprised of her rights and interest in the property—she being wholly ignorant of the law in the matter, or of her rights under the law—secure a purported settlement or agreement signed by respondent, in which she was to turn over to the appellant all the children save one, and all the property, for the paltry sum of $2,500; found that the agreement was unfair, procured by unwarranted and unfair means, and so unconscionable that it should be set aside; found that the respondent in this action was a fit and proper person to have the custody and care of the minor children; and, as conclusions of law, that the bonds of matrimony be dissolved; that the respondent is entitled to one-half of all the personal and real property now owned by the appellant and respondent; that respondent is entitled to

the custody of the minor children, they being of tender age, and that the appellant have the right to visit and help support them, and that the contract in relation to the settlement be set aside. A decree was entered in substantial compliance with said conclusions, awarding the custody of all the children to respondent, and requiring appellant to pay into court for the benefit of respondent the sum of $2,000, to be paid out only upon the order of the court; and within sixty days to pay in the further sum of $13,000, for the use and benefit of the respondent, as a balance due the respondent from the community property, to be paid out upon the order of the court only; and making provision for the vesting of title in case of the payment of said money. From this judgment the appeal is taken.

The appellant presents numerous assignments of error, principally in relation to the refusal of the court to admit testimony, and in exceptions to the findings of fact. It is not necessary to discuss these assignments in detail, for the whole transaction was presented to the court in such a way that it is not difficult to conclude what the exact situation was. The evidence is fairly conclusive that the respondent was guilty of adultery with the co-respondent Madden, or at least that her actions were such as to reasonably lead the husband to so interpret them; and, if the husband himself were guiltless there might be some reason for his claim that he should be entitled to a larger portion of the community property, and entitled to the custody of the children. But there are other crimes which affect domestic felicity than that of adultery, and the reading of this record convinces us that the husband was largely responsible for the wayward course eventually pursued by the wife. Constant charges of infidelity, habitual application of vulgar epi-

thets and vile names to a wife, frequent intoxication and
abuse, both by word and by blows (it being testified that
at one time the husband kicked the wife in the barn be-
cause she was not able to successfully handle a vicious
cow, and that he applied vile epithets to the wife the
day after the birth of one of her children because she
was not able to do the milking) harshness and inhu-
manity with the children, calling them the most vile
names that one person could call another, names not fit
for repetition in this opinion—such a course of conduct
could only have the result to alienate the affections of
the wife. The next natural result is the longing on the
part of the wife for sympathy and companionship from
somebody else, and, when that sympathy is proffered,
it frequently happens, as we think it did in this case,
that she tenders in return therefor the highest measure
of reciprocation. And, while the law will not excuse
crime of any kind, neither will it be too nice in its dis-
tinctions, and take from a wife, on account of her mis-
haps, her share of the property which has been earned
by her, and give it to a husband who, by his brutal na-
ture and treatment, has been largely instrumental in her
downfall.

From an investigation of the record, we think the court
was right in setting aside the agreement or settlement
with reference to the community property. It was con-
tended by the respondent that the agreement was void,
under the law, as being against public policy; but, while
it was not a void agreement, it shows, by reference to
the testimony in relation to the property generally, that
it was not a fair agreement, the testimony of the wife
being that it was an agreement which was forced upon
her through threats and intimidation. This court has
had this question under advisement in the case of *Timm*

*v. Timm,* 34 Wash. 228, 75 Pac. 879. In that case, quoting from Mr. Bishop on Marriage and Divorce, § 702, it is said:

"It is not *per se* a violation of the law's policy, there- ·fore it is not necessarily nugatory, for the parties to a divorce suit to enter into an agreement as to what alimony shall be allowed,. how their property shall be divided, and the like, on the rendition of a decree for dissolution or separation. But if the contract is of a sort to stimulate the divorce, to discourage any defense, or in any way to ·impose upon the court, it will be void; for example, it will be void if so framed as to have effect only on condition that divorce is granted without alimony. Hence practically, and almost and sometimes quite as a matter of law, an agreement of this sort should be laid before the judge, when, to an extent not readily definable, it will be ill if he dissents, and good if he approves."

In that case a citation was also made from the supreme court of Iowa, in *Martin v. Martin,* 65 Iowa 255, 21 N. W. 595, to the following effect:

"The courts however will in every case scrutinize the transaction very closely, and the contract will not be enforced unless it appears to have been fairly entered into, and to be reasonably just and fair to the wife."

This court continuing says:

"We see no just reason why this equitable rule should not be applied to such agreements made during the pendency of divorce suits, as well as to such contracts made in contemplation thereof. Furthermore, under our statutory provisions, Pierce's Code, § 4637, Bal. Code, § 5723, these proceedings with reference to the adjustment of the property rights between the spouses are regulated and determined by action of the court in that regard, and not by agreement between the parties. The courts will not lend themselves to anything that will encourage or facilitate divorces, by being too ready to

recognize and enforce contracts between husband and wife adjusting their property rights, either before such proceedings are instituted or during their pendency."

There was a very earnest effort made by the appellant to show that the respondent signed this agreement upon condition that no further action should be taken against Madden. This testimony, which was offered several times, was rejected by the court. But if it had been proven that such was the case, it would have been an additional reason why the agreement should have been held null and void.

The night before this agreement was made, the appellant, with one Doyle, a sort of detective, and two other men, each armed with a revolver, slipped down to the house where the respondent was living, with the intention of surprising Madden by finding him in intimate relations with respondent. They broke the panels of the door, stuck their lanterns in where they could see, and claimed to have seen Madden hastily dressing near the bed occupied by the respondent. The respondent testifies that they came in brandishing their revolvers; Madden claiming that, in the mean time, he had been sleeping on the floor in the front room, but, hearing that they were hunting for him, thought discretion was the better part of valor, retreated upstairs and jumped out of a window. Mr. Doyle took it upon himself to run around the house and fire three shots at him, as he retreated returning the fire. Recriminations were indulged in between the husband and wife, the party leaving and returning again in an hour or two; then, after more talk, leaving again. The next morning, according to the testimony of respondent, Doyle came to her house, told her that he was an officer, and had a warrant for her arrest, and that she had better make a settlement with the appel-

lant, or things would go bad with her; and that she finally did settle for the amount of $2,500 (as described in the agreement), a hack and the house in Wilson Creek, which seems to have been of little value, and which we think was probably the separate property of the respondent, although the record is not clear in that respect. These threats are denied by Doyle, but the fact remains that he took it upon himself to go and see the respondent for the purpose of obtaining this settlement, and we are satisfied, from all the testimony, as was the trial court, that it was obtained through misrepresentation and fraud, and that the wife was not made acquainted with her rights in the premises.

Unfortunately, so far as the children are concerned, we are forced to the conclusion that neither of the parties ought to have the care and custody of children of tender age; but, as there seems to be no alternative in this case, we have concluded to award to the care, custody, and control of the father the three oldest children, viz., Anna C., David A., and Lora L.; and to the care, custody, and control of the mother, the two youngest children, viz., Ruby A. and Iva J.

As to the division of the property, we are not satisfied that an equitable division was made. The testimony in relation to the value of the personal property is exceedingly meager. It would seem that it ought to have been more definite and certain; while there is no testimony at all in relation to the value of the large holdings of real estate. We judge, from what crops out in the record, that the court obtained some information relative to these values from outside sources, but this court cannot be controlled by such supposed information.

We therefore remand this case to the lower court, affirming the decree with relation to the divorce—as

we think it is not possible for these parties to live to-
gether again in harmony—with the disposition, care
custody, and control of the children as above indicated,
and with instructions to take further testimony to the
satisfaction of the court in any manner in which it sees
fit, either by commission, or by deposition, or oral testi-
mony, as to the value of the property; and, when such
value is ascertained, to divide the property, as it existed
at the time of the commencement of the action, equally
between the husband and the wife, either by a division
of the physical property itself, or by awarding a money
judgment to the respondent for her share of the value
of such property, making it a lien upon all the prop-
erty of the estate until it is paid.

FULLERTON, C. J., and ANDERS, MOUNT, and HADLEY,
JJ., concur.