[No. 9190. *En Banc.* August 10, 1911.]

## WILLIAM K. NOBLE, *Appellant*, v. OLYMPIA BREWING COMPANY, *Respondent.*[1]

SALES — RESCISSION BY VENDEE — WAIVER — DILIGENCE — USE OF GOODS. The right to rescind a sale of a car load of elm hoops and liners for breach of warranty as to quality is waived, and the purchaser cannot use a part and tender pay for the part used, in defense of an action for the price, where, on receipt of the shipment, objection was made to the quality and a twenty-five per cent deduction from the invoice price claimed, which claim was promptly disallowed by the seller, who directed the purchaser to notify by wire immediately if the stock could not be used, which the purchaser failed to do, but during several months used a large per-

[1]Reported in 117 Pac. 241.

centage of the shipment under continual claims for credit on account of breakage; since diligence in returning or offering to return the goods is essential.

DUNBAR, C. J., CHADWICK and GOSE, JJ., dissent upon the facts.

Appeal from a judgment of the superior court for Thurston county, Mitchell, J., entered June 30, 1910, upon the verdict of a jury rendered in favor of the defendant, in an action on contract. Reversed.

*King & King,* for appellant.
*G. C. Israel,* for respondent.

CROW, J.—This action was commenced by William K. Noble against Olympia Brewing Company, a corporation, to recover $945.49, remainder of purchase price on a carload of merchandise. Judgment was entered in plaintiff's favor for $176.20, less $37.60 costs awarded to the defendant. The plaintiff has appealed.

The evidence shows that, on or about February 5, 1907, appellant sold respondent a carload of elm hoops and liners to be delivered f. o. b. at Olympia, Washington; that, after much delay, claimed by appellant to have been caused by inability to obtain a suitable car, the shipment was made from Columbus, Ohio, and reached Olympia, Washington, on or about May 3, 1907. On May 11, 1907, respondent wrote appellant the hoops and liners were of inferior quality, and requested a memorandum credit of 25 per cent on the invoice price to cover its alleged loss. Appellant promptly refused this request, contended the goods were first-class, and insisted upon full payment. Respondent, by way of affirmative defense, alleged the goods were guaranteed; that, relying upon such guarantee, it paid $454.75 freight charges, unloaded the car and discovered the goods were of inferior quality, a fact that could only be definitely ascertained by using a portion of them; that respondent notified appellant of the condition of the hoops and liners, and refused to ac-

cept them except at a discount; that when respondent ordered the hoops, appellant agreed to ship promptly, but failed to do so; that by reason of appellant's delay, respondent was without hoops or liners for use in its business, and was compelled to commence using the shipment; that in so doing it discovered their inferior quality; that appellant has refused, and still refuses, to accept a return of the goods; that respondent now holds, subject to appellant's order, 38,080 6-6 elm hoops, 10,000 6-0 elm hoops, and 40,000 liners, which are without value to respondent; that while attempting to adjust its demands, respondent used 15,000 of the 6-0 elm hoops, 30,000 of the 6-6 elm hoops, and 10,000 liners; that in doing so it sustained a loss of 15 per cent thereon; that the hoops and liners so used were of no greater value than $612.75; that respondent has paid thereon $454.75, the freight charges; that there remains due appellant therefor $158, which respondent tendered in court with $18.20 accrued interest and $16.20 costs, or $192.40 in all. The jury returned a verdict in appellant's favor for $176.20.

Appellant's controlling contention is that, from the allegations of the answer and undisputed written evidence, it clearly appears there was no rescission of the contract, and that by receiving the car and using the quantity of hoops and liners alleged in the answer, respondent not only waived its right to rescind, but also accepted the entire shipment. Making this contention, appellant requested the following instruction, which was refused:

"The defendant alleges in its answer, that after using the portions of the hoops and liners as referred to heretofore, it tendered back to the plaintiff, the remaining portions of said hoops and liners, and offered to pay for those portions used, at the contract price, less 15% for breakage, which offer the plaintiff rejected, and you are instructed that the plaintiff had a right to reject this offer, and it did not constitute a defense to this action for the reason that, by using the considerable portion of the hoops and liners that it did, the defendant waived its right to rescind the contract for a

breach thereof, as to the quality of the hoops and liners, if there was any such breach, and bound itself to take all the hoops and liners, and pay for the same."

Instead of giving this instruction, the trial judge submitted to the jury for its determination the question whether there had been an acceptance or a rescission by respondent. There is nothing in the record sufficient to show that respondent at any time made a positive and unconditional declaration of its election to rescind, or that it tendered a return of the goods prior to the filing of its answer. In making this statement we are not unmindful of respondent's letters to appellant. On May 11, 1907, it wrote appellant it would not accept the goods unless appellant conceded a credit of 25 per cent on the invoice price, which appellant promptly refused. Much correspondence ensued, throughout all of which respondent contended the goods were of inferior quality, while appellant contended they were first-class. This correspondence continued from May, 1907, until the following December without satisfactory results. During this time respondent used in its business a large portion of the hoops and liners, the amount being alleged in its answer. It is fallacious to argue that it could continue using the goods and at the same time rescind the order, or that it was necessary for respondent to use so large a percentage for the sole purpose of ascertaining their quality, while respondent at the same time reserved to itself the right to rescind. Respondent's first letter written after the arrival of the car, dated May 11, 1907, reads as follows: ·

"We have received the car of hoops which you sent us and are now using them. We wish to state that we are exceedingly disappointed in the quality of stock sent us as the breakage of these hoops average 25%, caused from not being first class stock. The head liners are in about the same condition and we are mailing you a sample of them to show you what we actually received. Had we known that this car of stock would turn out so poor we would not have received it. As you promised us that you would send us

strictly No. 1 stock we expected to receive it. We must insist upon your sending us a credit memorandum for 25% of the amount of your invoice to cover our loss on this shipment. We will make no settlement any other way, so hope to be favored with your credit by return mail so as to make settlement."

This language indicates an election, intention, and willingness to accept and use the goods at a reduced price. On May 16, appellant answered, refusing the requested credit, saying:

"Wish to say that we cannot entertain any thoughts of allowing you to deduct twenty-five per cent from the face of our invoice, as, if you cannot use this car as per invoice rendered you, wish you would kindly wire us immediately upon receipt of this letter."

Respondent did not wire as requested, but on May 24 wrote another letter in which it evidenced its continued use of the hoops and liners by making the following statement:

"Each cooper is keeping a daily report of the number of hoops broken which they mark on their time slips. Will you take their count as rendered or if you want, we can have them make sworn statement and you are to allow us for breakage less 3% which we believe to be a liberal allowance for first class stock. You surely cannot expect us to stand this loss alone and we are willing to work the stock up on this basis. This way, we believe will be a square deal to us both. We believe that this way of adjusting this matter would be more preferable and profitable to you than going to the expense of reloading and paying freight to some other point."

Respondent did not act diligently in refusing the shipment, but continued its use of the stock. Its letters indicate that it needed the stock, and that it used a large percentage for that reason. If goods are purchased under a guaranty of quality, and upon examination do not measure up to the guaranty, the vendee, for his protection, has an election of two remedies. He may, upon discovery of the inferior quality, with due diligence and without unnecessary delay, rescind

the contract, return or offer to return the goods, and proceed against the vendor for his damages sustained, or he may retain the goods and recover his damages, either in an action prosecuted by himself for that purpose, or by recoupment in an action for the purchase price prosecuted by the vendor. *Seattle Nat. Bank v. Powles*, 33 Wash. 21, 73 Pac. 887.

In *Cream City Glass Co. v. Friedlander*, 84 Wis. 53, 54 N. W. 28, 36 Am. St. 895, 21 L. R. A. 135, a vendee claimed a shipment of soda ash was not suitable for the purpose intended, and so notified the vendor. Thereafter he used six tierces out of sixty-three shipped, and then attempted to rescind the contract of sale and recover the purchase price which he had paid. In reversing a judgment in his favor the supreme court of Wisconsin said:

"Now, in this case the plaintiff's officers determined at once, and upon inspection alone, that the material was unfit for their purposes, and so notified the defendant, and rejected the entire lot. They did not claim to need any test. They took their position definitely. After that act they could not deal with the property in any way inconsistent with the rejection, if they proposed to insist upon their right to reject. *Churchill v. Price*, 44 Wis. 540. They must do no act which they would have no right to do unless they were owners of the goods. Benjamin, Sales, 6th ed., § 703. Under these rules it is evident the plaintiff had no right to use up a quantity of the material several weeks after the rejection. By the rejection it became defendant's property, if such rejection was rightful. Plaintiff had no right to use any part of it. It is claimed that the use was simply for the purpose of providing evidence of unfitness for the purposes of the trial of this case; but one has no right to use his opponent's property for the purpose of making evidence. The act was an unmistakable act of ownership, and entirely inconsistent with the claim that the material had been rejected, and was owned by defendant."

Here the respondent not only claims a rescission, but offers to return only about one-half or a little more of the shipment. Applying the law to the undisputed facts which appear in the written correspondence, we are compelled to hold that,

by using an excessive and unnecessary percentage of the goods, respondent not only accepted them, but also waived its right to rescind. The trial court erred in submitting to the jury the issue of acceptance or rescission. If the respondent has suffered damages it is entitled to recoup them in this action, and for that purpose may amend its pleadings if it so desires.

The judgment is reversed, and the cause remanded for. a new trial.

MORRIS, PARKER, MOUNT, ELLIS, and FULLERTON, JJ., concur.

CHADWICK, J. (dissenting)—The quality of the goods involved in this case could be determined only by actual test. When they were put to this, it was found that they were deficient in quality. But whether they were in fact unfit for the uses intended became immaterial, as will be made to appear. The fact that the goods were inferior in quality was immediately called to the attention of appellant, and the subsequent correspondence between the parties shows that respondent did not continue to use the goods intending to rescind, but did so at the request of appellant and under an assurance that in the end it would be found that the breakage did not exceed five per cent. Under such circumstances respondent had a right to use the stock. Finally, after a fair test, respondent notified appellant that it still found

"the percentage to be very much greater than we can stand. We cannot see our way clear to accept the shipment at the face of the invoice. If you can arrange to have some one take the remaining stock off our hands, please do so, and send us shipping instructions and then we will arrange for the loading and shipping to whom you want sent."

After some correspondence as to the amount of the stock that had been used, respondent proposed to replace enough to make up a carload, and to ship it subject to appellant's order. It was finally agreed that the differences between the parties would be settled by respondent shipping to appel-

lant's order at Aberdeen a carload of stock.    Under date September 16, appellant wrote as follows:

"In further reference to our favor of the 6th inst., wish you would either ship us a carload of hoops and liners . . . or send us your check in full as per the invoice we sent you. Also let us know by return mail as to what you are going to do, so we can govern ourselves accordingly.    Ship the car to W. K. Noble, at Aberdeen, Washington."

On September 26, respondent notified appellant that it had made a rush order for a car from the east, and that the car had been forwarded on September 20 from some place in Michigan.    Notwithstanding this offer and its acceptance, appellant wrote respondent on October 2, saying:

"I have your favor of the 26th, and our customer at Aberdeen cannot wait indefinitely for his shipment of hoops, and our account, we think, can be collected very easily."

And on October 14 appellant wrote, saying:

"I have your favor of the 8th, and our customer at Aberdeen could not wait any longer for the stock, and we had to make prompt shipment or lose his order, and his car has now gone forward.    We would have taken this stock if we could have gotten it promptly.    But to wait on your car to arrive from the east and when it might be on the road three or four weeks would be an injustice to our customer."

The fact that appellant, agreeably to the understanding had between the parties, had shipped a car on September 20, gives the lie to the assertion of appellant that his customer at Aberdeen could not wait for an indefinite time, or until a car might arrive from the east.    The record shows that, whether the goods were shipped by appellant or by respondent, they had to be ordered in the east, and to a minority of this court, at least, it seems more reasonable to suppose that a car leaving Michigan on September 20 would reach Aberdeen before a car leaving Indiana some time in October would arrive at the same destination.

The crux of this case lies in this:    After due trial at the solicitation of appellant, the goods were found to be unfit.

Thereafter a new contract was entered into, and when respondent had entered upon its performance in good faith, appellant repudiated it. Not only repudiated it, but did so in bad faith; for on respondent's letter of the 26th of September, we find a notation which was carried into the letter of October 2d quoted above: "our account can be collected very easily." So, after all, it may be plainly seen that the financial responsibility of the respondent was the temptation which moved appellant to his repudiation and is the inspiration of this lawsuit. The law of rescission is in no sense involved. That question was eliminated, if it was ever in the case, by the subsequent agreement of the parties, and all instructions, or the refusal of the court to give instructions on the subject of rescission, would be immaterial error, for the court instructed not only upon appellant's theory, but upon the case as we have outlined it, and the jury has found, under proper instructions, that appellant was at fault. That being so, respondent was liable for that part of the stock which it had used while negotiations for a settlement were pending, and no more. The verdict of the jury should stand.

DUNBAR, C. J., and GOSE, J., concur with CHADWICK, J.