Cream City Glass Co. vs. Friedlander.

CREAM CITY GLASS COMPANY, Respondent, vs. FRIEDLANDER, Appellant.

*December 8, 1892 — January 10, 1893.*

*Sale of chattels: Principal and agent: Evidence: Rescission.*

1. One who has made in his own name a written contract for the sale of goods cannot relieve himself from responsibility thereunder by showing that he was acting simply as agent or broker for a principal, whether such principal was disclosed or not.
2. After the vendee' of goods has decided that they are not fit for the purpose for which they were purchased, and has notified the vendor of his decision and his rejection of the goods, he cannot use a portion of the goods in making a practical test, for the purpose either of determining the question of their fitness or of providing evidence of their unfitness, and still insist upon the right to reject them.

APPEAL from the Circuit Court for *Milwaukee* County. Action for money had and received. Plaintiff company

manufactures glass at Milwaukee. They entered into the following contract with defendant September 4, 1890:

"Chicago, September 4th, 1890.

"*Cream City Glass Company:* Sold to you about one hundred and fifty (150) tons Muspratt Bros. & Huntley's 48 per cent. carbonated soda ash for shipment by steamers from Liverpool, monthly, in about equal parts, during the months of October, November, and December of the current year (about fifty tons monthly), at $1.65 per 100 net, invoice weights, cash on arrival, against delivery of documents, less one per cent., accidents to factory, in transit, or *force majeure* excepted. Subject also to changes, if any, in United States tariff laws during pendency of this contract.                                     L. M. FRIEDLANDER.

"No change in tariff impending.   L. M. F."

Muspratt Bros. & Huntley were manufacturers of soda ash at Liverpool, England. In accordance with the contract, *Friedlander* caused to be shipped from Liverpool sixty-three tierces, or 113,390 pounds, of soda ash, which arrived on plaintiff's side track at its factory about December 13, 1890. Plaintiff paid duties and freight on the shipment, also the contract price of the goods, amounting in all to $1,698.17. The goods were unloaded by plaintiff. Upon examination the material appeared to have been damaged by water, and plaintiff caused the following letter to be sent to defendant, December 13, 1890:

"DEAR SIR: The railroad has just delivered your soda to us. On opening it, we find it absolutely unfit for use. The casks have evidently been under water until over half of the soda has soaked away. We wish you would come up and see it at once. Very truly yours,

"CREAM CITY GLASS CO."

On December 19, 1890, plaintiff gave to defendant personally the following notice:

"DEAR SIR: Please take notice that the shipment of

Cream City Glass Co. vs. Friedlander.

soda ash made by you and received by us on or about the
10th day of December, 1890, under your contract of Sep-
tember 4th, 1890, amounting to about sixty-three casks,
was found to be wholly unfit for the uses and purposes for
which it was purchased. We therefore notify you that we
hereby rescind the said sale, and hereby offer to return to
you the said soda ash. We further notify you that said
soda ash is now at our factory, subject to your order, and
that we hereby demand immediate repayment to us of the
purchase price paid by us therefor. Respectfully yours,

"CREAM CITY GLASS CO.

"RICHARD OGDEN, Sec."

Evidence was introduced tending to show that the soda
ash was not suitable for the manufacture of glass, and con-
tained but thirty-four per cent. of alkali, instead of forty-
eight per cent. The evidence showed, however, that the
ash was of some commercial value, though not as much as
it would have been worth had it contained forty-eight per
cent. of alkali.

*Friedlander* refused to receive the property back, and in
the latter part of January or first part of February, 1891,
the plaintiff made a practical test of the material, by using
about six tierces thereof, amounting to 1,500 or 1,600
pounds, in one of its furnaces, mixing it with the other nec-
essary materials, and endeavoring to make glass. Plaintiff
claims that the test showed that glass could not be made
from the ash. There was evidence tending to show that
it was necessary to use this amount to make a practical
test of the material. Upon the question of the effect of
this test upon the plaintiff's right of rescission the trial
judge charged the jury as follows: "If you find from the
evidence that the plaintiff, in making such test, used more
of the soda ash in question than was absolutely necessary
to determine its merchantable quality, or whether it was
fit and proper for the uses for which it was bought and

sold, or whether it was in accordance with the contract, or if you find that it was unnecessary to make such test, then such act is inconsistent with such rescission, and you will find for the defendant; or, if you find from all the facts and circumstances in the case that the plaintiff, after such election to rescind, did any act inconsistent with the ownership of the defendant, then you will find for the defendant." To which charge defendant excepted.

There was a verdict and judgment for plaintiff for the full amount of the purchase money, freight, and duty paid, from which defendant appeals.

For the appellant there was a brief by *Williams, Friend & Bright* and *Williams & Robinson*, and oral argument by *O. T. Williams.* They argued, among other things, that it was error to exclude the evidence offered to show that the defendant was acting in the capacity of a broker and not as principal and that this fact was known to the plaintiff. The memorandum delivered to the plaintiff was in reality a "bought" note. It states in effect "I have sold you about 150 tons . . . *for* Muspratt Bros. & Huntleys," etc. Upon such a note the broker is not liable. Meachem, Agency, secs. 932, 956, 555; *Bacon v. Eccles,* 43 Wis. 229; Benj. Sales, sec. 276; *Whitney v. Wyman,* 101 U. S. 392; 1 Parsons, Cont. (6th ed.), 549; Story, Agency, sec. 291; *Raymond v. Crown & E. M.* 2 Met. 324; *Ferris v. Kilmer,* 48 N. Y. 300; *Baltzen v. Nicolay,* 53 id. 467. When a vendee wishes to rescind a contract of sale on account of breach of warranty, and to recover back the purchase price, he must offer to return all that he has received under the contract, and must keep himself in a position to return all that he has received, and must not exercise any rights of ownership over it after he has elected to rescind. Bishop, Cont. secs. 836, 679; *Simmons v. Putnam,* 11 Wis. 194; *Hendricks v. Goodrich,* 15 id. 679; *Van Trott v. Wiese,* 36 id. 440, 448; *Merrill v. Nightingale,* 39 id. 247; *Stowell*

*v. Eldred*, id. 614; *Herman v. Gray*, 79 id. 182; *Merrill v. Wilson*, 66 Mich. 232; *Mason v. Smith*, 8 N. Y. Supp. 301; *Gould v. Cayuga Co. Nat. Bank*, 99 N. Y. 337; *Perley v. Balch*, 23 Pick. 283; *Connor v. Henderson*, 15 Mass. 319; *Morse v. Brackett*, 98 id. 205; *Churchill v. Price*, 44 Wis. 540.

For the respondent there was a brief by *Ogden, Hunter & Bottum*, and oral argument by *L. M. Ogden*. To the point that the defendant cannot relieve himself from liability by showing that he acted or intended to act as agent of Muspratt Bros. & Huntley, and not as principal, they cited *Stowell v. Eldred*, 39 Wis. 614–627; *Higgins v. Senior*, 8 Mees. & W. 834; *Weston v. McMillan*, 42 Wis. 567–570; *Dykers v. Townsend*, 24 N. Y. 60; *Briggs v. Partridge*, 64 id. 357; *Babbett v. Young*, 51 id. 238; *Cobb v. Knapp*, 71 id. 348; *Argersinger v. Macnaughton*, 114 id. 539; *Collins v. Buckeye State Ins. Co.* 17 Ohio St. 215.

WINSLOW, J. The defendant claimed that he only acted as a broker between the plaintiff and the Liverpool firm for the sale of the soda ash in question, and upon the trial offered much testimony, consisting of letters and telegrams which passed between himself and the plaintiff, and which led up to and finally culminated in the written contract of sale which is set forth in the statement of the case. This testimony was offered for the purpose of showing that defendant acted simply as a broker, and that the contract should be construed simply as a broker's sold note. This testimony was all rejected by the trial court, upon the ground that it tended to vary and contradict the terms of a written contract. This ruling was strictly right. The contract which defendant executed, and under which the goods were delivered, was a plain and unambiguous contract of sale, and upon familiar rules previous negotiations could not change its legal effect. There was nothing to

prevent the defendant from making a contract binding himself personally if he chose to do so, notwithstanding his ordinary business may have been simply that of a broker, and notwithstanding also the fact that he may have preliminarily negotiated in the capacity of a broker in this very transaction. Having made such a contract, he cannot now relieve himself from responsibility thereunder by showing that he was acting simply as agent or broker for a principal, whether such principal was disclosed or undisclosed. *Weston v. McMillan,* 42 Wis. 567.

We shall consider but one other question upon this appeal, and that is the question of the effect upon the rights of the parties of the use of six tierces of the soda ash by the plaintiff in January or February following the sale, for the purpose of testing its fitness for the manufacture of glass. Assuming that the evidence is sufficient to establish an implied warranty that the soda ash in question was of a quality reasonably fit to be used in the manufacture of glass, the question is, Could the plaintiff, after having decided that the material was wholly unfit, and notified the defendant of its decision and its rejection of the material, proceed to use three quarters of a ton of the material in making a practical test, and still insist on its right of rejection? It seems clear that the plaintiff was entitled to a reasonable time after actual receipt of the material to exercise the right of rejection in case the goods did not conform to the contract. Benj. Sales (6th ed.), § 703. If this fact could only be ascertained by a practical test, the plaintiff also had the right, within such reasonable time, to make such practical test, using only so much of the material as was reasonably necessary for the purpose, without thereby losing the right of rejection. Benj. Sales (6th ed.), § 896; *Philadelphia Whiting Co. v. Detroit White Lead Works,* 58 Mich. 29. But this test is plainly for the purpose only of enabling the purchaser to decide whether the material con-

forms to the contract. If the fact can be determined by inspection alone, the test is not necessary, and the use of the material, therefore, clearly unjustifiable. Now in this case the plaintiff's officers determined at once, and upon inspection alone, that the material was unfit for their purposes, and so notified the defendant, and rejected the entire lot. They did not claim to need any test. They took their position definitely. After that act they could not deal with the property in any way inconsistent with the rejection, if they proposed to insist upon their right to reject. *Churchill v. Price*, 44 Wis. 540. They must do no act which they would have no right to do unless they were owners of the goods. Benj. Sales (6th ed.), § 703. Under these rules it is evident the plaintiff had no right to use up a quantity of the material several weeks after the rejection. By the rejection it became defendant's property, if such rejection was rightful. Plaintiff had no right to use any part of it. It is claimed that the use was simply for the purpose of providing evidence of unfitness for the purposes of the trial of this case; but one has no right to use his opponent's property for the purpose of making evidence. The act was an unmistakable act of ownership, and entirely inconsistent with the claim that the material had been rejected and was owned by defendant. It follows that the judgment must be reversed.

*By the Court.*— Judgment reversed, and cause remanded for a new trial.