[Civ. No. 1371.    Third Appellate District.—March 2, 1916.]

# UNITED MOTOR SAN FRANCISCO COMPANY, Appellant, v. W. C. CALLANDER et al., Respondents.

SALE OF TOURING CAR—FRAUD—RESCISSION—INABILITY TO RESTORE CAR TAKEN IN EXCHANGE.—A vendee under a contract for the purchase and delivery of a new touring car is not deprived of his right to rescind the contract upon discovery that the car received by him was not a new car, because of the fact that the vendor had resold the car of the vendee, which he received in part consideration of the sale, notwithstanding the vendee had knowledge that the vendor intended to, and did, sell such car.

ID.—LIABILITY OF VENDOR—DAMAGES.—Under such circumstances, the vendor must make good in damages the value of the car which it cannot restore, and this it may be required to do in the action for rescission.

ID.—PROMPTITUDE IN RESCISSION—CONSTRUCTION OF CODE.—The first requisite of rescission is prompt action, and subdivision 1 of section 1691 of the Civil Code is mandatory as to the promptitude required, except as to the cases therein enumerated, and others where a sufficient showing is made in excuse for the delay.

ID.—USE OF CAR—EVIDENCE—PROMPT RESCISSION.—In an action to recover on the promissory note given as part consideration of the sale, it cannot be contended that the vendee failed to rescind the contract within a reasonable time, from the fact that he made no attempt so to do until two days before his note fell due and after he had used the car almost a month, where it is made to appear that he received the car under a warranty of a reputable firm that it was a new car, and that he was about to become the agent for the sale therefor in the locality.

ID.—REMOVAL OF PARTS OF CAR BY VENDEE—EXHIBITS IN COURT—RESCISSION UNAFFECTED.—The defendant in such action is not precluded from asserting his right to rescind on the ground that he exercised acts of ownership over the car inconsistent with his claim that he was holding it subject to plaintiff's order, where such acts consisted in taking off the wheels, detaching some parts of the car, and bringing them into court as exhibits at the trial, while the car was in the custody of the sheriff under attachment, in the absence of any showing that the car was injured or its value impaired by the temporary removal of such parts, or that the defendant was prevented thereby from delivering the car to the plaintiff as the court directed, on compliance by plaintiff on its part with the judgment of the court.

APPEAL from a judgment of the Superior Court of San Joaquin County, and from an order denying a new trial. C. W. Norton, Judge.

The facts are stated in the opinion of the court.

William M. Cannon, and Kingsley Cannon, for Appellant.

J. W. Hawkins, for Respondents.

CHIPMAN, P. J.—Plaintiff brought the action to recover upon a promissory note executed by defendants at the town of Manteca, San Joaquin County, December 23, 1911, for the sum of six hundred dollars, with interest at seven per cent per annum, principal due thirty days after date. Where in this opinion we use the singular number for one of the defendants, reference will be to defendant W. C. Callander.

In their answer defendants admit the execution of the promissory note, and as defense thereto alleged that "on or about December 23, 1911, plaintiff and defendant W. C. Callander entered into a contract whereby the plaintiff promised to sell and deliver to said defendant one new, 1912 model, Sampson, 35 horse-power, five passenger, fore-door touring car in consideration of said defendant delivering to the plaintiff one Flanders runabout, $350.00 in cash, and his promissory note for $600.00 signed by said defendant and his wife, Mrs. W. C. Callander"; that, pursuant to said contract, defendant paid plaintiff $350, delivered said Flanders runabout, and executed said promissory note signed as aforesaid, all of which was upon the agreement that plaintiff would deliver said Sampson car of the description above given; that plaintiff failed and refused to deliver to defendant the car so promised by plaintiff, but did deliver a car of the description mentioned except that it was not a new car; that it was an old, used car, "and had become worn, and the parts thereof had become weakened, crystallized, broken and worn . . . and had been repainted by plaintiff for the purpose of concealing the fact from defendant that said touring car was an old car . . . and defendant was unable, at the date of the delivery of said car to him, to ascertain or perceive the worn, weakened, crystallized and broken condition of said car by reason" of its being so painted and varnished; that, on January 20, 1912, defendant discovered that said car was not when

delivered a new car and was in the condition above described, and thereupon defendant notified plaintiff that said car was not new, but was an old car, and defendant "offered and tendered to plaintiff the return of said car and demanded that plaintiff return to defendant said Flanders runabout, the said note and $300.00"; that said demand was in writing, and by mistake three hundred dollars was demanded instead of $350; "and in said demand the said defendant rescinded the contract had by and between the said plaintiff and the said defendant"; that plaintiff refused, and still refuses, to comply with either of said demands, "or deliver up or cancel said promissory note."

"By way of cross-complaint and for affirmative relief," defendants set up substantially the foregoing facts. It is also alleged that defendants have been at all times ready and willing, and are now ready and willing and able, to deliver to plaintiff, and do tender to plaintiff, the said Sampson car; that there was no consideration for said promissory note, the consideration therefor having failed.

A second cross-complaint is pleaded by defendant W. C. Callander alone which contains the same averments as are found in the first cross-complaint of defendants.

The prayer is that plaintiff take nothing by its action; that plaintiff be required to deliver up the said Flanders runabout to defendant, and be required to pay the defendant the sum of $350 and to surrender up and cancel said promissory note, and that defendant recover damages in the sum of five hundred dollars, and for general relief.

The cause was tried without the intervention of a jury. The findings of fact were in favor of defendants and were substantially as alleged in the answer and cross-complaint. As conclusions of law the court found "that defendants are entitled to judgment against plaintiff on their cross-complaint for the sum of $350.00 cash paid by them at the time of the delivery of said Sampson automobile, to wit: December 23, 1911," with interest from that date, "for the delivery of said Flanders runabout, and if that cannot be returned in substantially as good condition as when delivered for the sum of $350.00, its value at the time of delivery"; also for the cancellation of said note for six hundred dollars and for their costs of suit; that plaintiff take nothing, and "that defendants shall return and deliver up to the plaintiff at

Manteca, California, the said Sampson automobile." Judgment was accordingly entered, from which and from the order denying its motion for a new trial plaintiff appeals.

While protesting that the evidence by a "vast preponderance" was in favor of plaintiff, counsel say in their brief that, "although we shall, under compulsion of the well-known rule of appellate practice, assume the car to have been an old one, we must nevertheless insist that it is an assumption contrary to the fact, and that this court for this reason should look with kindlier favor upon the equitable rules of laches, estoppel, and *statu quo* upon which we here rely in denial of the correctness of the court's finding that a rescission was established."

This concession renders it unnecessary to state the evidence in support of the findings that plaintiff willfully concealed the fact upon which defendants relied that the car was a new one and fraudulently obtained the promissory note, the subject of the action.

Plaintiff's first point is that the evidence does not support the finding that a rescission was established, for the reason "that the transaction was a tripartite one, involving a barter with a third person not a party to the action." The sale was made for plaintiff by its agent, Hastings, who delivered the car to defendant at Manteca. On his cross-examination as a witness defendant testified: "I know that that Flanders car was sold the same day I turned it over to the plaintiff. It was sold that same day in Manteca to Mr. Hooper. I knew that as soon as Mr. Hastings took the Flanders from me he was to take it right around and sell it to Mr. Hooper. It was all part of the same transaction, and Mr. Hastings was to get a Reo runabout from Mr. Hooper." Plaintiff relies upon *Bailey* v. *Fox*, 78 Cal. 389, 397, [20 Pac. 868], which was an action for rescission of a contract for the sale by defendant to plaintiff of a one-third interest in a stock of hardware and agricultural implements. At the same time defendant sold a like interest to one Meinke, and each then became owner of one-third interest in the stock of goods, and, as part of the agreement, the three formed a copartnership to carry on the business, which by the agreement was to continue for three years. An inventory was taken, and in November the partners entered upon the business and conducted it together until the following May, selling the old stock and replenish-

ing by purchase of new, when plaintiff claimed to have discovered that the representations made to him and on which he acted were false, and sought rescission. Said the court: "The tender was not of the goods purchased, as a great part of them had been sold. The offer was to deliver the goods on hand, and pay the amount realized from the sale of those disposed of. This was not sufficient. Upon rescission, the defendant, before paying back the purchase money and delivering up the notes, was entitled to receive the identical things sold. He was not bound to take the price at which they were sold. That might, so far as we know, have been less than their value. But whether it was or not, the rule is well settled that where the party complaining has parted with the thing purchased, he cannot rescind, but must resort to damages." It was also pointed out that, when the offer to rescind was made, "it had become impossible by the act of the plaintiff himself, or jointly with the other active partner, to place the defendant *in statu quo*. As a result of the sale, a partnership had been formed, as we have stated, and the whole stock had become partnership property, in which Meinke, who was not made a party to this action, had an interest. A large part of the stock had been sold, and new stock purchased on credit, for which the defendant as well as the other partners were personally liable. This being the situation of affairs, it was utterly impossible to place any of the parties *in statu quo*. It is well settled that under such circumstances there can be no rescission of the contract." In the case here defendant is in position to tender, and he has tendered, all the property he received from plaintiff. The case we have just been considering furnishes no support to the proposition that because plaintiff sold the Flanders car and cannot restore it, the defendant has lost his right of rescission. Plaintiff received this car, as it did the cash and the promissory note, in part consideration of the sale of the Sampson car. That defendant knew plaintiff intended to and did sell the Flanders car was no part of the inducement to defendant in purchasing the Sampson car, and formed no part of the contract. In rescinding, defendant "must restore to the other party everything of value which he has received from him under the contract; or must offer to restore the same, upon condition that such party shall do likewise, unless the latter is unable or positively refuses to do

so.'' (Civ. Code, sec. 1691, subd. 2.) Plaintiff not only is unable, but has positively refused, to restore all or any part it received. But it cannot avoid its duty by itself creating this disability. In such a case it must make good in damages the value of the part of the property it received and cannot restore, and this it may be required to do in the action for rescission.

Section 3408 of the same code provides: ''On adjudging the rescission of a contract, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require.'' Plaintiff has asked for no reciprocal or compensatory relief, nor in equity could it reasonably seek it, inasmuch as it, though protestingly, feels itself compelled to submit to the finding that it fraudulently misrepresented its car to be a new one, and thereby induced defendant to purchase it. Plaintiff cannot complain that it is not placed *in statu quo* in respect of the Flanders car, because by its voluntary act it sold that car and received the money for it, and by its own act made it impossible for defendant to restore it to plaintiff. Furthermore, defendant is no more required to restore that car to plaintiff than he is required to pay plaintiff the purchase money, for the Flanders car was delivered and received, like the money, as part consideration for the Sampson car.

It is further contended that defendants did not attempt to rescind within a reasonable time. It was said in *Hammond* v. *Wallace,* 85 Cal. 531, [20 Am. St. Rep. 239, 24 Pac. 837], that the first requisite in rescission is prompt action; and it was held in *Marten* v. *Paul O. Burns Wine Co.,* 99 Cal. 355, [33 Pac. 1107], that subdivision 1, section 1691, of the Civil Code, which provides that the party rescinding must do so ''promptly upon discovering the facts,'' etc., is mandatory as to the promptitude required, except as to the cases therein enumerated (i. e., where there is duress, undue influence, or disability and the party is aware of his right to rescind) and others where a sufficient showing is made in excuse of the delay.

The promissory note was dated December 23, 1911, and became due January 22, 1912, and the written notice of rescission was given January 20, 1912. Plaintiff cites *Gamble* v. *Tripp,* 99 Cal. 223, [33 Pac. 851], in which the defendant pleaded rescission on the ground of fraud. In that case, four

and a half months elapsed after discovery of the fraud, and not until the action was brought upon a long past due promissory note did defendant offer to rescind. Said the court: "This, in the absence of some excuse for the delay, was certainly not the prompt action required by the code, and therefore cannot be availed of." *Bailey* v. *Fox,* 78 Cal. 389, [20 Pac. 868], cited by plaintiff, was the case of alleged fraud in a contract of partnership where the delay in offering to rescind was four months after discovery of the fraud which was held fatal to the claim. It is contended that defendant was silent after discovering the alleged fraud and continued to treat the property as his own, and is therefore bound by the contract and will not be permitted to rescind. (Citing *Grymes* v. *Sanders,* 93 U. S. 55, 62, [23 L. Ed. 798].) Furthermore, that, after knowledge of the alleged discovered defects in the car, defendant affirmed the contract by asking an extension of time to pay the note and the privilege of reselling the machine in order to meet the note.

Defendant was at the time engaged in running a garage at the town of Manteca, which is thirteen miles from Stockton and seventeen miles from Modesto. In his business he carried passengers by automobile to near-by towns. In purchasing the car from plaintiff it was understood that he was to have the agency for the sale of the Sampson car. The car was brought by its own power from San Francisco by plaintiff's agent, Hastings, and arrived in the morning about 9 o'clock, Hastings having stayed overnight at Tracy. Defendant testified that passengers were there anxious to catch a train at Stockton, and Hastings drove the car there for defendant, who made no examination of the car at that time. On his return he found "one of the [front] tires was worn through the fibre, the thread was worn out down to the fibre on one wheel and the other was worn flat considerably and the fender on the right hand side of the machine at the back was broken." He wrote to plaintiff and the tire was replaced about a week later. He took off the radiator, which was leaking, "and found that it had been patched." He used the car some time, and drove it on a trip to Modesto, "and one of the front springs came in two and separated." This, he testified, was about three weeks after he got the car. About a week later he drove the car again to Modesto and broke the other spring. He then started to dismantle the car,

and for the first time examined its parts and became satisfied that it was an old car, as other witnesses who examined it testified was the fact. This was two or three days before the note became due. He testified that he used the car carefully and that the roads were in fair condition, and that he had not driven the car more than two hundred miles in all. He testified that, on January 20th, on his return from his second trip to Modesto, he telephoned to plaintiff, and, on January 22d, he wrote plaintiff, in which he informed plaintiff that "the car was second-handed and was second-handed when I bought same from you," and calling upon plaintiff "to send and get the car," and that he "refused to accept the car and pay for it according to contract." On January 6th plaintiff wrote defendant, reminding him of the note, to which defendant replied, January 8th, expressing disappointment in getting money and, in closing, said: "I would rather you would take the car back, if terms satisfactory to both parties can be arranged. I would do my best to sell it for you here." Plaintiff replied, of date January 9th, suggesting part payment, and that the balance could be carried "for a reasonable length of time. We assure you we want to do everything possible to help you out, and sincerely trust that in the near future you will be able to send us several orders for cars." On January 15th defendant wrote plaintiff making a proposition that if plaintiff would accept three hundred dollars cash and a note for ninety days, he would "send same by return mail." He speaks also of having tried to make sales, and one party proposed to exchange real estate as payment. "They like the car fine, but have no cash to put in a car just now." He testified that he meant that the party "liked the appearance of the car." January 16th plaintiff replied, making a counter proposition to accept three hundred dollars and a note for ninety days for balance. No further correspondence appears except defendant's letter of January 22d and a more formal letter of like tenor, of date January 26th, written by defendant's attorney to plaintiff. Defendant testified: "The first time my suspicions were aroused that the car was a second-hand car was when I came home from Modesto, when that spring was broken. That is the spring marked 'Defendants' Exhibit A.' That is a part that fits over the center part of the spring, and covers up the place where the spring is broken. Yes, it is a clip. These bolts

and the clips fasten the spring to the axle. That could not be seen until the spring came apart.'' Upon a careful examination of parts not theretofore noticed particularly, evidences of wear were discovered indicating, as witnesses testified, previous use of the car to considerable extent.

It might seem strange that defendant had this car in use nearly a month before discovering that it was a used car when delivered. The correspondence is much dwelt upon by counsel as tending to show, and we think the inference a reasonable one, that, as late as January 15th (the car was delivered December 23d), defendant had no thought of rescinding. Indeed, defendant testified that his suspicions were first aroused that the car was not a new one after returning from Modesto on January 20th. This was five days after his letter of the 15th was written. Lapse of time alone is not of itself conclusive of laches. The circumstances under which the car was received and the conduct of the purchaser in using it are of more consequence. Defendant received the car under warranty that it was new. He was about to become the agent for the sale of this type of car, and the evidence shows that he made efforts to carry out the objects of his agency. Dealing with a reputable firm and having no cause for distrusting its members, and being about to engage in business with them, he would naturally and might, we think, justifiably accept their statements at face value. The circumstance that he did not rescind until two days before his note became due, and the fact that presumably he was satisfied with the car as late as January 15th, were matters placed before the court, and, as we must presume, were given full weight in determining the question whether the delay in rescinding the contract was fatal to recovery. All the facts and circumstances being considered, we cannot say that the court reached its conclusion unsupported by sufficient evidence.

Plaintiff cites *Oppenheimer* v. *Clunie*, 142 Cal. 313, [75 Pac. 899], in support of its claim that defendant affirmed the contract after discovering the defects in the car. It is true he did discover some defects prior to January 15th, but not enough to arouse his suspicion. But it was after this date that other facts came to his notice which led to a careful examination of the car and the discovery that it was not a new one.

It was contended that defendant exercised acts of ownership over the automobile inconsistent with his claim that he was holding it subject to plaintiff's order. It appeared incidentally in the case that the car was under attachment, at whose instance does not appear, and was in the custody of the sheriff at and before the time of the trial. While in the sheriff's custody, and with his consent, but without the consent of plaintiff, defendant took off the wheels and detached some other parts and brought them into court as exhibits at the trial.

Plaintiff cites *Cream City Glass Co.* v. *Friedlander,* 84 Wis. 53, [36 Am. St. Rep. 895, 21 L. R. A. 135, 54 N. W. 28]; *Klock* v. *Newbury,* 63 Wash. 153, [114 Pac. 1032]; *Noble* v. *Olympia Brewing Co.,* 64 Wash. 461, [36 L. R. A. (N. S.) 467, 117 Pac. 241]. In the first of these cases a vendee claimed a shipment of soda ash was not suitable for the purpose intended, and so notified the vendor. Thereafter he used six tierces out of sixty-three shipped, and then attempted to rescind the contract of sale and recover the purchase price which he had paid. The judgment in favor of the vendee was reversed on appeal. The supreme court said: "Now, in this case the plaintiff's officers determined at once, and upon inspection alone, that the material was unfit for their purposes, and so notified the defendant, and rejected the entire lot. They did not claim to need a test. They took their position definitely. After that act they could not deal with the property in any way inconsistent with the rejection if they proposed to insist upon their right to reject. They must do no act which they would have no right to do unless they were the owners of the goods. (Benjamin on Sales, 6th ed., sec. 703.) Under these rules it is evident the plaintiff had no right to use up a quantity of the material several weeks after the rejection. By the rejection it became defendant's property, if such rejection was rightful. Plaintiff had no right to use any part of it. It is claimed that the use was simply for the purpose of providing evidence of unfitness for the purposes of the trial of this case; but one has no right to use his opponent's property for the purpose of making evidence. The act was an unmistakable act of ownership, and entirely inconsistent with the claim that the material had been rejected, and was owned by defendant."

The second of the cases cited was rescission of a contract for the sale of an automobile warranted to be a sixty horsepower car. The vendee had expended $49.90 in an attempt to put the car in order. His action was to recover the purchase price, the amount spent for repairs and fifty dollars damages for time lost in attempting to operate the car. Among other defenses it was urged that in expending $49.90 in repairs, plaintiff was estopped from claiming the right to rescind. Holding that this contention was untenable, the court stated the rule as follows: "Voluntary acts on the part of the purchaser of a chattel under a warranty of condition which will operate as an estoppel of the right to rescind must be such as affect the seller, and cause a change in his situation with reference to the property, making it inequitable to enforce the remedy."

The third of the cases cited was rescission of a contract for the sale of material for barrels. Defendant notified the seller that the quality was inferior, and requested a reduction, which was refused. Correspondence ensued, the defendant meantime continuing the use of the material "much more than was necessary to ascertain its quality." Referring to the two cases above noted, the court held that "by using an excessive and unnecessary percentage of the goods respondent not only accepted them, but also waived its right to rescind."

It does not appear that the car was injured or its value impaired by temporarily removing some of its parts to be used as evidence at the trial, or that defendant was prevented thereby from delivering the car to plaintiff as the court directed he should, on compliance by plaintiff on its part with the judgment of the court. In the case of the *Cream City Glass Co.* v. *Friedlander,* 84 Wis. 53, [36 Am. St. Rep. 895, 21 L. R. A. 135, 54 N. W. 28], where the court said the plaintiff had no right to use the defendant's property for the purpose of manufacturing evidence against its opponent, the statement must be read in connection with the facts. The glass company used a considerable quantity of the soda ash for its own purposes, much more, as the court found, than necessary to test its quality. The claim that it was done to obtain evidence might well have called for the statement that the company had no right to do this. The decisive fact was that the company had used an excessive quantity and received the benefit of it, and would not be permitted to take cover

under the pretense that it was to obtain evidence. Here the facts were quite different. Defendant made no personal use of the car after his notice of rescission, nor did he exercise any acts of ownership over it. It would have been more orderly to have first obtained the order of the court or consent of plaintiff for what he did, but we cannot see that the rules laid down in the cases cited by plaintiff were so far violated by defendant as to preclude him from asserting his right to rescind.

We discover no prejudicial error in the record, and the judgment and order are, therefore, affirmed.

Hart, J., and Burnett, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on April 3, 1916, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on May 1, 1916.