[L. A. No. 29659. In Bank. Mar. 31, 1970.]

E. T. RUNYAN, Plaintiff and Respondent, v.
PACIFIC AIR INDUSTRIES, INC., Defendant and Appellant.

## COUNSEL

E. W. Sheridan for Defendant and Appellant.

Young, Wooldridge, Paulden, Self & Williams, Young, Wooldridge, Paulden & Self and Robert J. Self for Plaintiff and Respondent.

## OPINION

SULLIVAN, J.—In this action for relief based upon the rescission of a franchise contract, defendant appeals from a judgment determining that the contract had been rescinded and ordering restitution and consequential damages in favor of plaintiff.

Defendant Pacific Air Industries, Inc. (Pacific) is a corporation engaged in the business of aerial surveying and photogrammetric services with headquarters in Long Beach. In 1965 plaintiff was, and for several years prior thereto had been, a geologist and engineer employed by Tidewater Oil Company (Tidewater). In October of that year he responded to an advertisement placed by Pacific in the Wall Street Journal announcing the availability of Pacific franchise territories in various areas of California. A number of conferences with Pacific followed. Eventually on March 9, 1966, plaintiff and Pacific entered into a written area service contract whereby, in consideration of the payment by plaintiff of $25,000, he was awarded an exclusive photogrammetric franchise for the Counties of Inyo, Kern, Kings and Tulare.[1] In the meantime, on February 18, 1966 he had

---

[1] The agreement provided in part: "LICENSOR [Pacific] hereby appoints E. T. RUNYAN as its LICENSEE with the right to use the trade name, PACIFIC AIR INDUSTRIES of BAKERSFIELD, under which name LICENSEE agrees to carry on its photogrammetric and aerial survey business."

resigned his position with Tidewater Oil Company.[2] At trial, plaintiff claimed that since he was entering a technical field in which he had no experience, he relied in part upon a schedule of projected income prepared by Pacific.

Under the agreement Pacific was obligated to train plaintiff in the rudiments of photogrammetry, provide 24-hour sales and technical assistance for the initial period, obtain premises in Bakersfield and supply that office with various essential devices for carrying on "second order instrument" services. The more sophisticated "first order instrument" work was to be done at the Long Beach plant.

There was evidence that during the training period (see fn. 2, *ante*) defendant provided little in the way of formal education in the theoretical aspects of topography and photogrammetry. Plaintiff was permitted to observe various aspects of plant techniques and was given instruction in some of the simpler aspects of the operation. He was also employed by Pacific at night to perform certain routine operations which to some extent supplemented his limited knowledge of the business. Much of the time, however, plaintiff had nothing to do.

In early April 1966, plaintiff completed his training and returned to his Bakersfield office to begin his franchise operation. Pacific's performance in supplying and maintaining the local office did not comply with its obligations under the contract. A promised sign did not appear for months and few of the necessary instruments and equipment were available until late in the summer. Instead of full-time assistance during the initial period plaintiff received infrequent visits from various officers of Pacific. Such visits, however, provided plaintiff with some opportunity to go into the "field" and observe sales techniques first hand.

Despite Pacific's failure to fully perform its promises plaintiff initially made no complaint. In late summer, however, he became concerned that his franchise was being treated by Pacific merely as a commission arrangement. He complained that Pacific was making charges for "first order instrument" work at arbitrary rates. Finally, on October 7, 1966, plaintiff gave Pacific written notice of rescission of the contract of March 9, 1966, based upon failure of consideration and fraud.

Shortly thereafter plaintiff brought the instant action for restitution and consequential damages. His complaint set forth four counts: the first based on rescission for failure of consideration; the second and third based on

---

[2]Toward the end of negotiations, it became evident that a contract would be signed and Pacific's officers requested plaintiff to "get his office open" and begin operations. Accordingly, before the formal agreement was executed, plaintiff resigned from Tidewater and reported to Pacific's Long Beach plant for training.

rescission for fraud; and the fourth a common count for money lent apparently grounded on a theory of rescission. Plaintiff sought recovery not only of the consideration paid by him but also of consequential damages consisting of office expenses, training expenses and loss of salary for the period during which he had attempted to operate under the franchise.

The trial court found in favor of plaintiff on the first count[3] but against plaintiff on the remaining three counts. The court concluded that plaintiff had rescinded the area service contract on October 7, 1966, and was entitled to recover the $25,000 franchise fee and his "net consequential damages" in the sum of $5,273.25.[4] Judgment was entered accordingly. This appeal followed.

Pacific does not challenge the trial court's determination that plaintiff had effectuated a rescission of the contract and was entitled to a recovery of the consideration paid. However it contends: (1) that the court should have required plaintiff to return or to give credit for the consideration received by plaintiff from Pacific; and (2) that the court erred in awarding certain items of consequential damages.

■ Pacific's first contention is essentially this: uncontradicted evidence showed continuing substantial performance of the contract by it; the trial court ignored its duty to make a finding as to the reasonable value of such performance; and the court compounded this error by its anomalous conclusion of law that "Plaintiff shall restore to defendant any consideration received by him which he still possesses."

It is true that the trial court made no finding as to the value of any benefit conferred upon plaintiff by Pacific's performance of certain of its contractual obligations. However, in awarding plaintiff consequential damages, the trial court allowed an offset of $3,065, representing plaintiff's "earned gross income" from the Bakersfield operation. (See fn. 4, *ante*.) The record indicates

---

[3]The court found in substance that there had been a material failure of consideration because Pacific (1) after granting plaintiff an exclusive franchise, continued to solicit and transact business in the franchise territory; (2) failed to provide equipment, photo library, sign, sustained promotional and technical assistance, and sufficient formal training; and (3) charged for supplementary services on an arbitrary percentage basis rather than according to a definite rate schedule.

[4]The findings clearly indicate that the court's award of consequential damages in the net sum of $5,273.25 was arrived at as follows:

| | |
|---|---:|
| Loss of income from 3/9/66 to 9/30/66 | $7,256.25 |
| Training expense | 550.00 |
| Office expense | 532.00 |
| | $8,338.25 |
| Less plaintiff's gross income from activities relating to franchise. | $3,065.00 |
| | $5,273.25 |

that plaintiff earned a portion of this sum by providing customers with services which required "first order instrument" work at Pacific's plant. In such cases Pacific received a portion of the customer's payment; the balance went to plaintiff. The trial court expressly found that Pacific's charges for such supplementary services were not made according to a definite rate schedule. The trial court also found that such charges by Pacific contributed to the failure of consideration upon which plaintiff's rescission was based.

From the express finding that Pacific made arbitrary charges, the court could have reasonably concluded that through such arbitrary charges, Pacific was attempting to recoup the very expenditures and rental value which it now claims as an offset against plaintiff's judgment. In our view, from the above express findings, it can reasonably be implied that the court found that any benefits conferred upon plaintiff by Pacific had been compensated for by its above-mentioned arbitrary charges.[5] This implied finding is confirmed by the court's remarks on hearing Pacific's motion for a new trial.[6] ■ As stated in *Richter* v. *Walker* (1951) 36 Cal.2d 634, 640 [226 P.2d 593]: "[W]hile full findings are required upon all material issues a judgment will not be set aside on appeal because of a failure to make an

---

[5]There are other reasons why Pacific's contention should not be sustained. The proper measure to be used in valuing any benefit conferred upon plaintiff is not clear. Pacific maintains that such measure is the amount of detriment suffered by it in conferring the benefit. Thus, in this case, Pacific would offset against plaintiff's recovery the sum of (1) the reasonable rental value of the equipment it provided and (2) its expenditures on the Bakersfield office. Plaintiff, however, asserts that, since Pacific failed to properly train plaintiff, most of the equipment was worthless to him. The true measure of the benefit conferred, plaintiff contends, must be its worth to the party upon whom it is conferred. Neither party has directed our attention to controlling authority on this point. However, in view of plaintiff's testimony that he lacked the skills to utilize much of the equipment, the rental value to someone possessing such skills would seem to be an inaccurate measure of any benefit conferred upon plaintiff.

Morever, even if the case were remanded to determine the reasonable value to this plaintiff of the benefit conferred, the trial court would necessarily also have to determine the value of a secondary offset to Pacific's claimed offset. Plaintiff's testimony discloses that Pacific urged him to "get his office open" so that potential customers would become aware of *Pacific's* presence in the Bakersfield area. There was also testimony that Pacific at one time sent a man to Bakersfield to work on the Long Beach Harbor project so that people would see that there was activity at the Pacific office in Bakersfield. It thus could be inferred that Pacific considered that plaintiff's presence in Bakersfield as a representative of Pacific was of *some* value to it. Plaintiff would therefore seem to be entitled to credit for the benefit which his presence conferred upon Pacific. In view of the difficulty in ascertaining meaningful values for these two nebulous items that trial judge might well have concluded that the approximate values of these items completely offset each other. Such a view is consistent with the court's statement that no further offsets were due.

[6]The trial judge stated: "The Court has reexamined the evidence, and cannot find that the Defendant is entitled to any offsets not heretofore granted." The "heretofore granted" language obviously refers to the court's conclusion that plaintiff should restore any consideration remaining to him.

express finding upon an issue if a finding thereon, consistent with the judgment, results by necessary implication from the express findings which are made."[7]

What we have said disposes of the contention that the trial court erred in failing to find the value of any benefit conferred upon plaintiff and to allow that value as an offset against his recovery. The second aspect of Pacific's argument is that the trial court reached an "anomalous conclusion" that plaintiff should restore "any consideration received by him which he still possesses." At oral argument, however, Pacific conceded that everything which Pacific had originally made available to plaintiff had been returned.

■ We now take up Pacific's principal contention that the court erred in awarding consequential damages. Actually Pacific does not challenge the entire award of consequential damages. It raises no issue as to the item of $1,082 for training and office expense. It objects only to the item of "loss of income" in the sum of $7,256.25 (see fn. 4, *ante*) upon the ground that there is no evidence that it had guaranteed to plaintiff a profit from the franchise equal to or greater than his former salary with Tidewater. In essence Pacific argues that plaintiff "assumed the risk" of loss which is inherent in any entrepreneurial activity. We are thus called upon to inquire into plaintiff's entitlement not only to the restitution of the $25,000 franchise fee but also to consequential damages because of the loss of his salary income.

The positions of the parties may be briefly summarized thusly: Pacific argues that damages cannot be recovered in the event of rescission since the two remedies are mutually inconsistent, a claim for damages being based upon an affirmance of the contract while rescission is predicated upon its disaffirmance. Plaintiff in response maintains that although prior to 1961 an award of damages in cases of rescission "might have been subject to serious question," nevertheless Civil Code section 1692[8] enacted in that year not only authorizes but probably requires an award of consequential damages where relief is sought based upon a rescission.

Section 1692 which provides for relief based upon rescission was added to the Civil Code in 1961 upon the recommendation of the California Law Revision Commission. (See said Commission's Recommendations and Study relating to Rescission of Contracts (1960) in 3 Cal. Law Revision Com.

---

[7]Former section 634 of the Code of Civil Procedure which is applicable to the instant case does not prevent our conclusion since the record fails to disclose that defendant made a written request for a specific finding on the issue in the manner prescribed by that section. (For the language of former § 634, see Stats. 1963, ch. 378, p. 1167, § 1; § 634, as presently in effect, does not apply. See Stats. 1968, ch. 716, p. 1418, § § 2, 3.)

[8]Hereafter, unless otherwise indicated, all section references are to the Civil Code.

Rep. (1961) D-5-D-35 (hereafter Law Revision Report).[9] We set forth section 1692 in full in the footnote.[10]

At the start it would appear that the statute compels the rejection of Pacific's argument that damages cannot be recovered in an action for relief based on a rescission since the section expressly and unequivocally states that a "claim for damages is not inconsistent with a claim for relief based upon rescission" and that the aggrieved party "shall be awarded complete relief, including restitution of benefits, if any, . . . and any consequential damages to which he is entitled; . . . but . . . not . . . duplicate or inconsistent items of recovery." (See fn. 10, *ante*.) Our more proper inquiry then is whether the relief awarded in the instant case is that intended by the Legislature. Since the enactment of section 1692 was not an isolated event (see fn. 9, *ante*) we must examine the section in the light of the historical background of rescission procedures and the purpose of the statutory changes enacted in 1961.

In California prior to 1961 there were two methods provided for in the Civil Code by which a party entitled to rescind could obtain rescissionary relief. The first, found in sections 1688-1691, specified certain instances in which a party to a contract might rescind it and provided that such rescission could be accomplished by the rescinding party by giving notice of the rescission and offering to restore everything of value which he had received. This method contemplated a rescission "by the individual act of one of the parties to the contract" and has been referred to as a unilateral

---

[9]See Statutes 1961, chapter 589, page 1733, which repealed Civil Code sections 3406-3408, amended Civil Code sections 1689 and 1691, added sections 1692 and 1693 to the Civil Code and amended Code of Civil Procedure sections 337, 339, 427 and 537, said act being effective September 15, 1961.

[10]Section 1692 provides: "When a contract has been rescinded in whole or in part, any party to the contract may seek relief based upon such rescission by (a) bringing an action to recover any money or thing owing to him by any other party to the contract as a consequence of such rescission or for any other relief to which he may be entitled under the circumstances or (b) asserting such rescission by way of defense, counterclaim or cross-complaint.

"If in an action or proceeding a party seeks relief based upon rescission and the court determines that the contract has not been rescinded, the court may grant any party to the action any other relief to which he may be entitled under the circumstances.

"A claim for damages is not inconsistent with a claim for relief based upon rescission. The aggrieved party shall be awarded complete relief, including restitution of benefits, if any, conferred by him as a result of the transaction and any consequential damages to which he is entitled; but such relief shall not include duplicate or inconsistent items of recovery.

"If in an action or proceeding a party seeks relief based upon rescission, the court may require the party to whom such relief is granted to make any compensation to the other which justice may require and may otherwise in its judgment adjust the equities between the parties."

rescission. (*McCall* v. *Superior Court* (1934) 1 Cal.2d 527, 536 [36 P.2d 642, 95 A.L.R. 1019].) Having rescinded the contract by his own act, the rescinding party then brought an action to enforce the out-of-court rescission. (*Philpott* v. *Superior Court* (1934) 1 Cal.2d 512, 524 [36 P.2d 635, 95 A.L.R. 990].) Such action was considered to be one at law brought on the implied promise on the part of the nonrescinding party to repay or return the consideration received. (*McCall* v. *Superior Court, supra,* at p. 535.) "In reality, it is an action in which the law, in order to prevent the unjust enrichment of defendants from the property of plaintiff, itself implies a promise to repay the sum demanded. In other words, it is an action in *assumpsit* upon a promise implied by law." (*Philpott* v. *Superior Court, supra,* at p. 518.)

The second method by which a party could obtain rescissionary relief was the action for a judicial rescission. (*Philpott* v. *Superior Court, supra,* at pp. 523-524.) Former sections 3406-3408 provided that a rescission could be adjudged on any of the grounds specified in section 1689 together with two additional grounds.[11] Unlike the method of unilateral rescission, however, this method was viewed as an action for specific judicial relief for the wrong giving rise to the right of rescission, and was deemed equitable in nature. (*Id.*; *McCall* v. *Superior Court, supra,* at p. 535.)

In short, the two procedures which we have described contemplated "two types of action for rescissionary relief"——the first an "action to enforce a rescission" and the second an "action to obtain a rescission." (See Law Revision Report, *supra,* at p. D-15.) Significant substantive and procedural differences existed between these two methods for obtaining rescissionary relief. The right to a jury trial, the applicable statute of limitations, the availability of the provisional remedy of attachment and the possibility of joinder of other claims all depended upon which of these two methods the plaintiff elected to use in seeking rescissionary relief. The result was a body of law which was "unnecessarily complex and confusing to both courts and attorneys, to say nothing of laymen." (Law Revision Report, *supra,* at p. D-6.)

As previously mentioned (see fn. 9, *ante,* and accompanying text) the Legislature made several changes in these procedures in 1961. Prominent among these was the addition of section 1692 (see fn. 10, *ante*) and the

[11]Former section 3406 (repealed in 1961 by Stats. 1961, ch. 589—see fn. 9, *ante*) provided: "The rescission of a contract may be adjudged, on the application of a party aggrieved:

"1. In any of the cases mentioned in Section 1689; or

"2. Where the contract is unlawful, for causes which do not appear in its terms or conditions, and the parties were not equally in fault;

"3. When the public interest will be prejudiced by permitting it to stand."

repeal of sections 3406-3408. ██ "This legislation, in effect, abolished the action to obtain court rescission and left only an action to obtain relief based upon a party effected rescission." (*Paularena* v. *Superior Court* (1965) 231 Cal.App.2d 906, 913 [42 Cal.Rptr. 366].) (See Law Revision Report, *supra,* at pp. D-6 - D-7.) As the Law Revision Report indicates, the purpose of the statutory changes was to eliminate the confusing and complex duality of rescission procedures by "providing a single, simple procedure to be followed in all situations where rescissionary relief is sought." (Law Revision Report, *supra,* at p. D-6.)

We perceive in this fusing of the two former rescission procedures no intention on the part of the Legislature to disturb, much less eradicate, substantive differences theretofore underlying such procedures. Indeed the Law Revision Report which was the genesis of these statutory changes included among its specific recommendations the following: "The rescission statutes should make plain that, after rescinding a contract, a party may seek any form of relief warranted under the circumstances, whether legal or equitable. As all such actions will be to *enforce* a rescission, the right of the parties to a jury and the court in which the action must be brought will be determined by the nature of the substantive relief requested and not by the form of the complaint. For example, if a bare money judgment is sought, a justice court will have jurisdiction in appropriate cases, and the plaintiff may not convert the action into an equity action and thus deprive the justice court of jurisdiction merely by a prayer for rescission. The statute should also make plain that the court may grant any other relief that is appropriate under the circumstances if it develops at the trial that the plaintiff has mistaken his remedy and the purported rescission was not effective." (Law Revision Report, *supra,* at p. D-7.) (Original italics.) It is manifest that section 1692 (see fn. 10, *ante*) was intended by the Legislature to effectuate the recommendations of the Law Revision Commission, including the recommendation just quoted, since the section is identical in language with the measure suggested by the Commission. (See and compare the Commission's proposed section 1692 found in its report at page D-10 with the statute as enacted.)

Under the new statutory scheme, when a contract has been rescinded in accordance with the statutory procedure (§ 1691)[12] "any party to the

---

[12]Section 1691 provides: "Subject to Section 1693, to effect a rescission a party to the contract must, promptly upon discovering the facts which entitle him to rescind if he is free from duress, menace, undue influence or disability and is aware of his right to rescind:

    (a) Give notice of rescission to the party as to whom he rescinds; and

    (b) Restore to the other party everything of value which he has received from

contract may seek relief based upon such rescission . . . ." This is accomplished by bringing an action "to recover any money or thing owing to him" and "for any other relief" to which he may be entitled. Whatever may have been the rule under former decisional law dealing with "legal" rescission, the statute now expressly provides that a "claim for damages is not inconsistent with a claim for relief based upon rescission" and that the aggrieved party "shall be awarded complete relief" including restitution and consequential damages, if any. (All quotations are from section 1692.)

Under pre-1961 law, however, an action at law to enforce an out-of-court rescission was, by its very nature, invariably restricted to the recovery of the consideration given by the rescinding party. As we have explained, it was an action in *assumpsit* upon a promise implied by law. (*Philpott* v. *Superior Court, supra,* 1 Cal.2d 512, 518.) The scope of relief was therefore limited by the promise raised by implication of law on which the action was based—namely to return the consideration (*id.*);[13] there was no implied "promise" to pay damages. The decisions were replete with statements that the remedies of rescission and damages were inconsistent.[14] Indeed our attention has not been directed to nor has our independent research revealed, any reported California case upholding an award of damages in an action at law brought under pre-1961 law to enforce an out-of-court rescission.

However, under pre-1961 law in actions in equity to obtain a judicial rescission, monetary awards including those of consequential damages,

---

him under the contract or offer to restore the same upon condition that the other party do likewise, unless the latter is unable or positively refuses to do so.

"When notice of rescission has not otherwise been given or an offer to restore the benefits received under the contract has not otherwise been made, the service of a pleading in an action or proceeding that seeks relief based on rescission shall be deemed to be such notice or offer or both."

[13]Speaking of the action to enforce a unilateral rescission, the court in *Philpott* said: "[I]t is a case where the plaintiff has not elected to sue for damages, general or special or both, which he may have suffered from the tort inflicted upon him by defendants; likewise it is not a case where the plaintiff is seeking the application of equitable remedies to redress his grievances. All these elements, which may have been shown by appropriate allegations for such relief, are conspicuously absent. Plaintiff apparently *is content to merely seek a return from defendants of money given them,* with interest, *forgetting and foregoing all other elements of injury.* Is it not plain, therefore, that he has waived the tort of defendants and has come into court relying solely upon the promise created by law to return to him the consideration paid upon the contract?" (Italics added.) (*Philpott* v. *Superior Court, supra,* 1 Cal.2d at p. 518.)

[14]See for example *Davis* v. *Rite-Lite Sales Co.* (1937) 8 Cal.2d 675, 678-679 [67 P.2d 1039]: "An action for damages is based on an affirmance of the contract; an action for rescission on a disaffirmance thereof. [Citations.] The two remedies are mutually inconsistent, although damages may be prayed for in the event rescission cannot be had. [Citation.]"

given in conjunction with restitution, have been sustained in a variety of contexts. Thus, it was settled that a vendee of real property who rescinded a land sale contract because of the vendor's fraud could recover the purchase money paid by him and the reasonable value of improvements less the reasonable rental value of the land while in the vendee's possession. (See, e.g., *Kent* v. *Clark* (1942) 20 Cal.2d 779, 785-786 [128 P.2d 868, 142 A.L.R. 576]; *Mosher* v. *Lack* (1919) 41 Cal.App. 23, 27 [181 P. 813]; see also *McDonald* v. *Mission View Homestead Assn.* (1876) 51 Cal. 210, 211; *Shermaster* v. *California Home Bldg. Loan Co.* (1919) 40 Cal.App. 661, 667-668 [181 P. 409].) An award for the value of improvements was also available in some cases where the vendee rescinded because of a failure of consideration. (See, e.g., *Barrows* v. *Harter* (1913) 165 Cal. 45, 46-47 [130 P. 1050]; *Garvey* v. *Lashells* (1907) 151 Cal. 526, 531 [91 P. 498]; *Fountain* v. *Semi-Tropic Land & Water Co.* (1893) 99 Cal. 677, 680-681 [34 P. 497]; *Worley* v. *Nethercott* (1891) 91 Cal. 512, 517 [27 P. 767]; *Gates* v. *McLean* (1886) 70 Cal. 42, 50-51 [11 P. 489]; *Haynes* v. *White* (1880) 55 Cal. 38, 41-42. See also *Owen* v. *Pomona Land & Water Co.* (1901) 131 Cal. 530, 541-542 [63 P. 850, 64 P. 253].) Similarly, the rescinding vendee was entitled to monetary compensation for any payments by him to reduce the amount of a mortgage imposed upon the property by the vendor. (*Arthur* v. *Graham* (1923) 64 Cal.App. 608, 612 [222 P. 371].) Where the vendor rescinded, the vendee was liable for the rental value of the land while he had possession. (*Austin* v. *Burns* (1934) 139 Cal.App. 747, 753 [35 P.2d 142].) When a contract for the sale of personal property was rescinded, a rescinding vendor was also entitled to an award for the reasonable value of the use of the property by the vendee (*Vice* v. *Thacker* (1947) 30 Cal.2d 84, 92 [180 P.2d 4]), or for its cost of replacement where the specific property could not be returned. (*Swan* v. *Talbot* (1907) 152 Cal. 142, 146-147 [94 P. 238]; *United Motor etc. Co.* v. *Callander* (1916) 30 Cal.App. 41, 45-46 [157 P. 561].) Finally, a monetary award was proper where the court conditioned the decree of rescission upon a payment by the rescinding party to a third party whose rights were affected by the contract. (*Stewart* v. *Crowley* (1931) 213 Cal. 694, 700-701 [3 P.2d 562].)

Some of these cases refer to such monetary awards given in an action for rescission as "damages" or "consequential damages." (See also 9 Cal.Jur.2d, Cancellation of Instruments, §§ 48, 50.) For example, we said in *Hines* v. *Brode* (1914) 168 Cal. 507, 511-512 [143 P. 729], that "[T]he vendee may rescind, and, in addition to the recovery of the consideration with which he has parted, obtain recoupment for *any other special damage* to which he has been subjected by the vendor's fraud." (Italics added.) (See,

e.g., *United Motor etc. Co.* v. *Callander, supra,* 30 Cal.App. 41, 46 ("make good in damages"); *Bank of America* v. *Greenbach* (1950) 98 Cal.App.2d 220, 238 [219 P.2d 814] ("money damages"); *Carter* v. *Carr* (1934) 139 Cal.App. 15, 27 [33 P.2d 852] ("consequential damages," citing *Hines* v. *Brode, supra*); *Lobdell* v. *Miller* (1952) 114 Cal.App.2d 328, 343 [250 P.2d 357] ("consequential damages," citing *Carter* v. *Carr, supra*);[15] cf. *Utemark* v. *Samuel* (1953) 118 Cal.App.2d 313, 317 [257 P.2d 656] ("defendants . . . elected to take the consequences, . . .").

The fundamental principle underlying these decisions and the awards which they upheld is that "in such actions the court should do complete equity between the parties" and to that end "may grant any monetary relief necessary" to do so. (*Stewart* v. *Crowley, supra,* 213 Cal. 694, 701.) It is the purpose of rescission "to restore both parties to their former position as far as possible" (*Bank of America* v. *Greenbach, supra,* 98 Cal. App.2d 220, 238, citing 3 Pomeroy, Equity Jurisdiction (5th ed.) 578) and "to bring about substantial justice by adjusting the equities between the parties" despite the fact that "the status quo cannot be exactly reproduced." (*Lobdell* v. *Miller, supra,* 114 Cal.App.2d 328, 344; see also *Utemark* v. *Samuel, supra,* 118 Cal.App.2d 313, 317.) As the court said in *Greenbach* "concurrent with the award of rescission, the trial court may award money damages or order such other relief as justice may require." (98 Cal.App.2d at p. 238.)

As the cases already cited by us illustrate, California courts applying

---

[15] In *Lobdell,* which involved rescission for fraud, the court observed: "The remedy of rescission necessarily involves a repudiation of the contract. The remedy afforded by an action for the recovery of damages suffered by reason of fraud, . . . involves an affirmance of the contract. The measure of damages recoverable in an action for rescission is essentially different from that in a simple action for damages . . . . In the rescission action a plaintiff is entitled to recover the consideration he gave on restoration or offer of restoration of that which he received. He is also entitled to recover compensation for whatever consequential damages he may have suffered by reason of having entered into the contract." (114 Cal.App.2d at p. 343.)

Thus the damages available under each remedy are different. The award given in an action for damages compensates the party not in default for the loss of his "expectational interest"—the benefit of his bargain which full performance would have brought. (Fuller and Perdue, *The Reliance Interest in Contract Damages:* 1 (1936) 46 Yale L.J. 52, 54.) Relief given in rescission cases—restitution and in some cases consequential damages—puts the rescinding party in the *status quo ante,* returning him to his economic position before he entered the contract. As we said in *Vice, supra:* "[T]he resulting judgment was predicated upon plaintiff's theory of relief; that upon his return of the $1,000 which he had received and his reimbursement of Kurofsky in the amount of $150, which the latter had expended in repair of the involved property, plaintiff was entitled to the recovery of said property *plus damages for its loss of use* in the sum of $1,122, . . . Such judgment, designed to place the parties *in status quo,* comports wholly with the principles of rescission and the equities of the case as the court resolved the controverted issues. [Citations.]" (30 Cal.2d at p. 92.)

general principles of equity have recognized that the restoration to the rescinding party of the consideration with which he originally parted does not necessarily in all instances restore him to his former position and bring about substantial justice. The rescinding vendee of land who in reliance upon the contract has placed improvements on the property must invariably be compensated for them if he is to be afforded "complete relief." In instances such an adjustment may be compelled so as to forestall unjust enrichment of the nonrescinding party through whose fault the grounds of rescission have arisen.

This prompts us to point out that restitutionary damages have not been awarded the rescinding party in every case of rescission. Such damages may be awarded in conjunction with restitution where rescission has been sought for the nonrescinding party's fraud (see, e.g., *Kent* v. *Clark, supra,* 20 Cal.2d 779, 785-786; *Hines* v. *Brode, supra,* 168 Cal. 507, 511-512), misrepresentations (see, e.g., *McDonald* v. *Mission View Homestead Assn., supra,* 51 Cal. 210, 211; *Shermaster* v. *California Home Bldg. Loan Co., supra,* 40 Cal.App. 661, 667-668), and, in some cases, failure of consideration (see, e.g., *Garvey* v. *Lashells, supra,* 151 Cal. 526, 531; *Fountain* v. *Semi-Tropic Land & Water Co., supra,* 99 Cal. 677, 680-681). We have not found nor has our attention been directed to any reported California decisions in which the courts have awarded consequential damages when rescission has been sought merely upon the grounds of illegality or mistake (but see *Owen* v. *Pomona Land & Water Co., supra,* 131 Cal. 530). It appears, therefore, that California decisions, in determining when restitutionary damages should be awarded, have differentiated between actions for rescission based upon a ground involving some fault on the part of the nonrescinding party, and actions based upon a ground not involving such fault. Only in the former category have courts of equity required the nonrescinding party to pay to the other restitutionary damages, for the obvious reason that otherwise he would be unjustly enriched.[16] (See *Paolini* v. *Sulprizio* (1927) 201 Cal. 683, 685 [258 P. 380].)

---

[16]The Law Revision Commission noted this distinction in its report: "It is essential to recognize that rescission is a commodious remedy available to redress various wrongs each of which, generically, is sharply distinguishable from the others. Rescission by agreement, for instance, is contractual in nature. An action to enforce such an agreement or to procure a decree of rescission because of such an agreement is, in essence, an action to enforce a contract which presumably would be enforceable at least by an action for damages for breach pursuant to general contract principles wholly regardless of the code provisions respecting rescission. Rescission upon failure of consideration includes cases where there is a breach (so that rescission is a mode of obtaining *restitutionary damages* as an alternative to compensatory damages) as well as cases where the failure of consideration results from such factors as impossibility (so that rescission is the only mode of redress available to the aggrieved party). Rescission for mistake, duress, menace or undue influence, by contrast, is a remedy by means of which a party may be relieved of the burdens and may procure

These traditional and deep-rooted principles of courts of equity can now be invoked through the simple procedure furnished by section 1692 which provides, among other things, that the *"aggrieved* party shall be awarded *complete relief"* (italics added) and that the court "may otherwise in its judgment adjust the equities between the parties."

Mindful of these principles and of the purpose of the statutory changes enacted in 1961, we turn to the case before us. Essentially the question we confront is whether the trial court, presumably responsive to the mandate that the aggrieved party be awarded complete relief, acted reasonably and equitably in making an award of consequential damages for plaintiffs "loss of income."

The trial court gave plaintiff relief on the first count[17] of his complaint which sought rescissionary relief based upon failure of consideration. Pacific's answer, although admitting the execution of the area service contract and the payment of the $25,000 fee, denied all remaining allegations, including that stating plaintiff's rescission of the contract on October 5, 1966. In his complaint plaintiff prayed for "A determination by the Court that said contract had been rescinded," restoration of the consideration paid and consequential damages. The trial court found that plaintiff had in good faith substantially performed his part of the contract, that there had been a material failure of consideration because of specified acts of Pacific (see fn. 3, *ante*), that plaintiff gave Pacific notice of rescission based on such failure of consideration, that *"In reliance* upon said contract plaintiff necessarily incurred" (italics added) certain expenses including the "loss of income" here in question, and that while the franchise was in effect plaintiff had certain gross income from his franchise activities.

As we have pointed out, the trial court awarded plaintiff the sum of $7,256.25 to compensate him for his loss of income for the period from the execution of the area service contract to the giving of the notice of rescission, this loss being measured by the salary he would have received had he remained at Tidewater. We cannot find this award unreasonable or inequitable particularly since, as the court expressly found, plaintiff relied upon the contract in severing his relationship with Tidewater. Not only did plaintiff suffer a loss but Pacific, enjoying the use of plaintiff's time and energies, received some benefit thereby. (See fn. 5, *ante*.) As in the situa-

---

restitutionary redress respecting a contract which was defective at its inception because consent was not freely or knowingly given. Rescission for illegality, finally, is a remedy which enables a party, in the circumstances specified, to procure restitutionary relief with respect to a contract which was never enforceable." (Law Revision Report, *supra*, at p. D-15, fn. 1.) (Italics added.)

[17]It will be recalled that the court found that the allegations of the remaining three counts were not true. (See fn. 3, *ante*, and accompanying text.)

tion of land contracts already alluded to, where the vendor whose fault caused the rescission would otherwise enjoy the improvements made by the rescinding vendee, so in the instant case the court could properly reason that Pacific would otherwise enjoy the benefit of plaintiff's time and energies without cost and would thereby be unjustly enriched.

However, we note that the trial court deducted from the total amount of consequential damages the gross income received by plaintiff during the same period from his activities relating to the franchise. (See fn. 4, *ante.*) By so doing it avoided any duplication in computing the value of plaintiff's full-time services and at the same time complied with the express statutory condition governing any award of consequential damages that "such relief shall not include duplicate or inconsistent items of recovery." (§ 1692.)

Thus the court's rescissionary relief may be summarized in this way: Plaintiff surrendered the exclusive franchise to Pacific and the latter was ordered to restore to plaintiff the $25,000 franchise fee and to pay plaintiff his net consequential damages. Plaintiff received damages for his loss of income for the seven-month period during which he attempted to carry out the contract but was not permitted to retain the gross income received under the franchise during that period. In sum, plaintiff recovered his original consideration and the damages he sustained in reliance on the contract. Pacific retrieved the exclusive franchise and was given credit for what it in effect had produced. We are satisfied that the trial court thus "adjusted the equities" between the parties and restored them to their former positions so far as it was possible to do so.

The judgment is affirmed.

Tobriner, Acting C. J., McComb, J., Peters, J., Mosk, J., and Burke, J., concurred.